830 So.2d 817 (2002)
STATE of Florida, Appellant,
v.
Darren Jerome GOODE, Appellee.
No. SC01-28.
Supreme Court of Florida.
October 17, 2002.
*818 Robert A. Butterworth, Attorney General, Dyann W. Beaty, Assistant Attorney General, Tampa, FL, and Richard L. Polin, Assistant Attorney General, Miami, FL, for Appellant.
James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Appellee.
PER CURIAM.
We have for review a trial court judgment certified by the district court of appeal to be of great public importance and to require immediate resolution by this Court. See State v. Goode, 779 So.2d 544 (Fla. 2d DCA 2001). We have jurisdiction. See art. V, § 3(b)(5), Fla. Const. For the reasons stated below, we affirm the trial court's order dismissing the involuntary civil commitment proceedings against the appellee, Darren Jerome Goode, initiated upon the expiration of his sentence of imprisonment, because a trial was not commenced within the mandatory thirty-day time period provided by statute, and no continuance for good cause was ordered prior to the expiration of that period. We further hold, however, that the expiration of the mandatory thirty-day period does not deprive the trial court of jurisdiction over the commitment proceedings.

*819 BACKGROUND
Darren Goode was convicted of attempted sexual battery and sentenced to a forty-two month prison sentence. He was scheduled to be released on October 28, 1999. On the day he was scheduled to be released, the State filed a petition to civilly commit Goode as a sexually violent predator pursuant to what is commonly known as the Jimmy Ryce Act (the Ryce Act),[1] sections 394.910-.931, Florida Statutes (1999) (entitled "Involuntary Civil Commitment of Sexually Violent Predators"). On that same day, the trial court made an ex parte finding pursuant to section 394.915(1), and without any notice to Goode, that probable cause existed to continue to detain Goode. Goode was thereafter detained indefinitely despite the expiration of his criminal sentence.
While Goode remained imprisoned he was not notified of the civil commitment proceedings until November 22, 1999, when a status hearing was held in front of a different judge of the Thirteenth Judicial Circuit, Judge Ralph Steinberg. At the time of the hearing, only six days remained before expiration of the thirty-day time limit provided for in section 394.916(1) to conduct a final hearing in the commitment proceedings. Goode's newly appointed counsel moved to dismiss the proceedings because of the difficulty involved with preparing for and proceeding to trial in six days. Judge Steinberg denied the motion without prejudice because another judge had been assigned to Goode's case and Judge Steinberg preferred that the motion be ruled on by the judge assigned to the case.
On January 6, 2000, while Goode was still being detained without trial, defense counsel filed two additional motions to dismiss the proceedings, and on January 24, 2000, a hearing on Goode's motions to dismiss was held before Judge J. Rogers Padgett, the assigned judge. At the conclusion of the hearing, Judge Padgett dismissed the proceedings on a violation of the statutory provision requiring a final hearing to commence within thirty days of the ex parte finding of probable cause. A written order was entered on the same day, providing:
That the Respondent's Motion to Dismiss be, and hereby is, GRANTED; The Court finds that pursuant to Sections 394.916(1), Florida Statutes (1999), the Petitioner failed to bring the Respondent to trial within the required 30 days; the 30 day time limit for trial was not requested to be continued for good cause by either party or by the court on its own motion pursuant to 394.916(2), Florida Statutes, (1999); since the time limit for commencing trial in this case has expired, it is hereby ordered that the petition is dismissed.
The State appealed and the Second District Court of Appeal certified the case to this Court without ruling on the merits. See Goode, 779 So.2d at 545. However, in another decision involving the same issue the Second District held that the thirty-day provision for bringing a detainee to trial was mandatory, a holding consistent with the trial judge's ruling herein. See Kinder v. State, 779 So.2d 512 (Fla. 2d DCA 2000). We have approved the Kinder holding in a separate opinion. See State v. Kinder, 830 So.2d 832 (Fla. 2002).

*820 ANALYSIS
The Ryce Act sets out a scheme for the continued detention of persons who have been convicted and imprisoned in Florida for certain sexual offenses. Sections 394.918-.930 of the Ryce Act provide for the civil commitment of "sexually violent predators" after their criminal sentences have expired. See §§ 394.910-.931, Fla. Stat. (1999). A "sexually violent predator" is defined in the Ryce Act as "any person who: (a) Has been convicted of a sexually violent offense; and (b) Suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." § 394.912(10), Fla. Stat. (1999).
Section 394.913 requires a multidisciplinary team made up of psychiatrists or psychologists to assess inmates in Florida prisons who are serving sentences for sexually violent crimes. § 394.913, Fla. Stat. (1999). If the multidisciplinary team concludes that the person meets the definition of a "sexually violent predator," the team must provide a written assessment and recommendation to the state attorney. See id. After receiving the team's assessment and recommendation, the state attorney is authorized to file a petition with the circuit court "alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation." § 394.914, Fla. Stat. (1999).
Section 394.915(1) authorizes the court to make an ex parte determination, based on the state attorney's petition, as to
whether probable cause exists to believe that the person named in the petition is a sexually violent predator. If the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall order that the person remain in custody and be immediately transferred to an appropriate secure facility if the person's incarcerative sentence expires.
In cases where a person's incarcerative sentence expires, entitling the person to release, section 394.915(2) provides for the possibility of a second "adversarial" determination of probable cause:
Upon the expiration of the incarcerative sentence and before the release from custody of a person whom the multidisciplinary team recommends for civil commitment, but after the state attorney files a petition under s. 394.914, the court may conduct an adversarial probable cause hearing if it determines such hearing is necessary. The court shall only consider whether to have an adversarial probable cause hearing in cases where the failure to begin a trial is not the result of any delay caused by the respondent.

(Emphasis supplied). No adversarial probable cause determination was conducted in Goode's case.

TIME LIMITATION FOR FINAL HEARING
The specific provision of the Ryce Act at issue in this case involves the time for trial after a court has made a determination of probable cause under section 394.915. Section 394.916 states, in pertinent part:
(1) Within 30 days after the determination of probable cause, the court shall conduct a trial to determine whether the person is a sexually violent predator.
(2) The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the interests of justice, when the person will not be substantially prejudiced.
§ 394.916, Fla. Stat. (1999) (emphasis added). The question before this Court actually *821 involves three distinct issues; whether the emphasized language should be considered jurisdictional, meaning that after the thirty days have elapsed the court loses jurisdiction over the case; whether the language is mandatory, meaning that the trial must be held within thirty days; or, whether the language is simply directory, meaning that compliance with the time limit is discretionary and merely a matter of convenience. Upon review, we conclude that by its plain terms, the thirty-day provision is mandatory but not jurisdictional.

Kansas Act
We begin our analysis with a brief discussion of the legislative history of the Ryce Act, which appears to have been largely based on Kansas's similar statutory scheme allowing for the continued civil commitment of certain sexual offenders even after they have served criminal sentences for their crimes.[2] The Florida Legislature first passed the Ryce Act in 1998.[3] The final staff analysis on the house version of the Jimmy Ryce bill referred to the "strict procedural safeguards" provided in the Kansas act and made numerous comparisons to provisions in the Kansas act. See Fla. H.R. Comm. on Fam. Law & Child., CS for HB 3327 (1998) Staff Analysis 9 (final May 26, 1998). Kansas's act was used as a model in part because the United States Supreme Court had upheld Kansas's act in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).[4] In Westerheide v. State, 767 So.2d 637, 645 (Fla. 5th DCA 2000), approved, 831 So.2d 93 (Fla.2002), for example, the *822 Fifth District concluded that "the Florida Legislature intended to establish a civil proceeding substantially similar to the Kansas Act scrutinized by the court in Hendricks."
The State contends that the Ryce Act was based on statutes from a number of different states and not just Kansas. However, our review of the available legislative history confirms that the Florida Legislature was intending to substantially pattern the Ryce Act after the Kansas act.[5] Both the Florida House of Representatives and the Senate developed several versions of bills that influenced the final version of the Ryce Act. Initially, the trial time-limit provision in the Florida House's version of the bill was similar to the Kansas act, except for the actual time period for trial, which was forty-five days. See Fla. HB 3327 § 7 (1997) (first engrossed version of bill). The Senate's initial version of the bill was also similar, but it used the Kansas act's sixty-day time limit. See Fla. SB 646 (1997) (initial bill introduced to committees). Although there is nothing in the legislative history indicating that the precise number of days allowed for trial was based on Kansas's act, it is clear that the Kansas act was the model for the language of the provision where the time limit for trial appears.
For example, the Bill Research and Economic Impact Statement for House Bill 3327 dated February 27, 1998, states that section 916.35 would require the court to conduct a trial within forty-five days after filing the petition and notes that the provision for trial is "[i]dentical to Kansas, except for the timeframe." On April 23, 1998, on the Senate floor Senators Klein and Gutman offered a number of amendments to the Senate bill, one of which changed the time limit for trial to thirty days. See Fla. S. Jour. 841 (Reg.Sess. 1998). In explaining the amendment, Senator Klein stated:
This amendment provides that the trial shall be shortly after the adversarial or non-adversarial probable cause hearing. Again our goal here is to make sure we compress the time and make sure that the court responds promptly so that all this can take place within six months prior to the point in time in which the person is scheduled to be released from the Department of Corrections.

Fla. S. tape recording of proceedings (April 23, 1998) (floor debate) (emphasis supplied). From Senator Klein's explanation, it appears that the thirty-day time limit was adopted in order to promptly resolve the detention issue and so that the entire commitment proceeding would be concluded before the alleged predator was scheduled to be released. This was no doubt influenced by the desire to avoid situations like the instant case where a defendant's incarcerative sentence has expired and he would ordinarily be entitled to immediate release.
We conclude that because both the Kansas and Florida Legislatures were concerned about the patent constitutional issues implicit in any scheme of involuntary and indefinite detention to be imposed in addition to specific criminal penalties imposed for the same underlying conduct, it is apparent that they sought to counter those concerns and temper the drastic effects of the indefinite detention scheme by the imposition of rigid time constraints set out in explicit language in the acts. Importantly, the Kansas courts have found *823 the sixty-day time provision of the Kansas act to be both mandatory and jurisdictional. See In re Brown, 26 Kan.App.2d 117, 978 P.2d 300, 303 (1999).

Mandatory v. Directory
The Legislature's interest in imposing rigid time constraints is expressly reflected in the language of section 394.916(1), which specifically states that the court "shall" conduct a trial within thirty days after the determination of probable cause. See § 394.916(1), Fla. Stat (1999). We have previously stated that "[a]lthough there is no fixed construction of the word `shall,' it is normally meant to be mandatory in nature." See S.R. v. State, 346 So.2d 1018, 1019 (Fla. 1977).
However, we have also noted that its interpretation "depends upon the context in which it is found and upon the intent of the legislature as expressed in the statute." Id. For example, courts have held that the term "shall" should be construed as mandatory where it refers to some action preceding the possible deprivation of a substantive right. See id.; Neal v. Bryant, 149 So.2d 529, 532 (Fla.1962); Allied Fid. Ins. Co. v. State, 415 So.2d 109, 111 (Fla. 3d DCA 1982); see also Kinder v. State, 779 So.2d 512, 514 (Fla. 2d DCA 2000) (stating that "[g]enerally, `shall' is interpreted to be mandatory where it refers to some action preceding the possible deprivation of a substantive right and directory where it relates to some immaterial matter in which compliance is a matter of convenience"), approved, 830 So.2d 832 (Fla.2002). Consistent with those decisions, and because there are significant and substantial liberty interests involved with the involuntary and indefinite detentions provided for under the Ryce Act, we conclude that the Legislature used the word "shall" to convey that the thirty-day time limit was mandatory, although not jurisdictional.
Several district courts have examined the language of the Ryce Act to determine whether the thirty-day time limit in section 394.916(1) should be construed as mandatory or directory. See Kinder v. State, 779 So.2d 512, 515 (Fla. 2d DCA 2000) (mandatory); State v. Osborne, 781 So.2d 1137, 1138 (Fla. 5th DCA 2001) (directory); State v. Reese, 773 So.2d 655, 657 (Fla. 1st DCA 2000) (directory).
For example, we find the reasoning in the Second District's opinion in Kinder on this issue to be on point and compelling:
Under the Act, once a commitment petition is filed and probable cause is found to exist, the detainee is required to be held without possibility of release until he or she is brought to trial. See § 394.915(5), Fla. Stat. (1999). The only limit placed upon this detention is the statutory provision providing that a detainee be brought to trial within thirty days of his or her initial detention. Moreover, although section 394.916, Florida Statutes (1999), allows for the thirty-day period to be continued, it also provides that such continuance may only be granted when the detainee will not be substantially prejudiced by it. See § 394.916(2). We conclude that the intent of the legislature in enacting the thirty-day time limit was to ensure that detainees be brought to trial without undue delay. Therefore, we also conclude that the thirty-day time limit is mandatory.

Kinder, 779 So.2d at 514-15 (emphasis added). We agree with this reasoning and conclusion.
On the other hand, in Osborne, the Fifth District Court determined that because there is no language in the Ryce Act to indicate that the Legislature contemplated a consequence for failure to bring a respondent *824 to trial within thirty days, the mandated thirty-day trial requirement is merely directory. Osborne, 781 So.2d at 1139. The absence of explicit language detailing a "consequence" for not holding trial, however, does not allow us to ignore the plain mandatory language the Legislature has provided based upon similar provisions in the Kansas act.
Furthermore, the Fifth District in Osborne failed to recognize the principle that the word "shall" should ordinarily be construed as mandatory according to its plain meaning, especially when it refers to an action preceding the denial of a substantive right. To support its finding that the Ryce Act's language is directory, the Fifth District relied on two opinions where this Court held that the word "shall" could, under special circumstances, be viewed as directory. See Belcher Oil Co. v. Dade County, 271 So.2d 118, 121 (Fla.1972) (noting in a case involving the right of a municipality to levy taxes on public utility services that "[a]lthough the term `shall' normally has a mandatory connotation, in proper cases and particularly so where required to conform to constitutional requirements, it may be construed as permissive only"); Schneider v. Gustafson Indus., Inc., 139 So.2d 423, 424 (Fla.1962) (holding in a worker's compensation case that the Industrial Commission's rule language stating that the appellant "shall" file transcripts within forty-five days was directory). Importantly, neither of these cases involved the significant deprivation of an individual's liberty rights. Rather, they are examples of cases where we have found that statutory language was directory either because it was related to some immaterial matter in which compliance was a matter of convenience, or because constitutional requirements required such an interpretation.
In addition to the statute's plain language, a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless. See Unruh v. State, 669 So.2d 242, 245 (Fla.1996); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 456 (Fla.1992). If the thirty-day time period in section 394.916(1) were held to be merely directory and could be routinely ignored without consequence, the limitations on continuances listed in section 394.916(2) would essentially be rendered meaningless. As noted above, section 394.916(2), allows for a continuance, upon a showing of good cause by one of the parties or by the court's own motion, only where the detainee will not be substantially prejudiced.[6] Clearly, the fact that the Legislature felt it was necessary to include a provision for continuance and limit the occasions on which a continuance should be granted indicates that the Legislature contemplated and intended that commitment proceedings would occur in a prompt and timely manner.

*825 INDEFINITE COMMITMENT
Indefinite commitments under the Ryce Act clearly do not present situations where compliance is a matter of convenience or inconsequential matters are at issue. To the contrary, under the Ryce Act, detainees could literally be committed indefinitely for the rest of their lives. The U.S. Supreme Court has stated that even in civil commitments "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). "It is clear that `commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' "Jones v. United States, 463 U.S. 354, 361, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) (quoting Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323, (1979)). Obviously these commitments involve serious substantive rights with constitutional implications.
Furthermore, as noted above, it appears that the Legislature intended that the State would initiate commitment proceedings while the inmate is still incarcerated. See § 394.915(1), Fla. Stat. (1999). In Valdez v. Moore, 745 So.2d 1009, 1012 (Fla. 4th DCA 1999), the Fourth District noted that the State in defending the constitutionality of the Ryce Act had
repeatedly emphasiz[ed] that in the typical case the procedures in the act will be carried out while the person is still incarcerated pursuant to the criminal sentence, and accordingly the absence of a probable cause hearing would not violate due process. Although that does seem to have been how the legislature contemplated that the Act would work, and under those circumstances there would be no due process problem created by the lack of an adversarial probable cause hearing, the Act did not work that way for these petitioners. Nor has the state cited any authority which would justify detaining these petitioners, who have completed their sentences, beyond their release dates without an adversarial probable cause hearing.
In fact, based on our review of the Ryce Act and the available evidence of legislative intent discussed above, we conclude that the Legislature intended that ordinarily the review process of potential sexual predators would be concluded while the person was still in prison.[7] The initial ex parte probable cause determination described in section 394.915(1) applies primarily to respondents who are still in prison, and a finding of probable cause under this provision simply requires that a respondent be transferred immediately to a secure facility upon the expiration of the sentence.
Civil commitment proceedings involve a serious deprivation of liberty and, thus, such proceedings must comply with *826 the due process clauses of the Florida and United States Constitutions. See Addington, 441 U.S. at 425, 99 S.Ct. 1804 (holding that civil commitment for any purpose constitutes significant deprivation of liberty that requires due process protection); Pullen v. State, 802 So.2d 1113, 1117 (Fla. 2001) (noting that "an individual who faces involuntary commitment to a mental health facility has a liberty interest at stake").
Presumably, if the State followed the time periods established in the Ryce Act, the commitment trial would take place well in advance of the respondent's date of release from prison and the due process concerns of commitment beyond imprisonment would be substantially alleviated. Under this scheme, the State would have multiple opportunities to initiate and pursue these commitments before the respondent's criminal sentence expires.[8]
However, as the Second District Court of Appeal has pointedly recognized, virtually the only safeguard and limitation put on the State's continued detention is the statute's requirement that the court "shall" conduct a trial within thirty days of a determination of probable cause. See Kinder, 779 So.2d at 515. Further, as the Fourth District Court of Appeal has emphasized, "the continued confinement of a person after he has served his full sentence for conviction of a crime is serious enough to warrant scrupulous compliance with the statute permitting such confinement, not to mention the applicable constitutional provisions." Johnson v. Dep't of Children & Family Servs., 747 So.2d 402, 403 (Fla. 4th DCA 1999).
In sum, if the word "shall" is not construed as mandatory, a serious question would arise as to whether the Ryce Act itself provides the proper constitutional protections to detainees, particularly as it has been applied to the respondent in the instant case. Accordingly, based on the importance of the obvious liberty rights at stake, and consistent with the Kansas act upon which Florida's law is modeled, we agree that the Legislature intended that there should be "scrupulous compliance" with the statutory thirty-day time limit set forth in section 394.916(1). See id.

Adversarial Probable Cause Hearing
While the Legislature intended that the commitment trial should take place well in advance of the respondent's date of release from prison, it also apparently recognized that in some cases there could be situations where the alleged offender was set to be released before the commitment trial had taken place. Thus, the Legislature created a separate, secondary adversarial probable cause determination. See § 394.915(2); see also Reese, 773 So.2d at 657 (noting that the Ryce Act contemplates two different probable cause determinations: an ex parte determination in accordance with 394.915(1) and an adversarial probable cause hearing described in 394.915(2)).[9] The adversarial probable *827 cause hearing described in section 394.915(2) can be held "[u]pon the expiration of the incarcerative sentence and before the release from custody." Thus, this secondary probable cause determination was apparently intended by the Legislature to be a fallback procedure for persons who were entitled to release from prison but still had not been brought to trial under the commitment petition. The adversarial probable cause hearing also provides the person with more rights than the initial ex parte probable cause determination (i.e., the right to counsel and to present evidence). See § 394.915, Fla. Stat. (1999).
The only additional guidance given by the Legislature for when to hold such a hearing was that the trial court "may conduct an adversarial probable cause hearing if it determines such hearing is necessary" and that the court should hold the hearing only in cases "where the failure to begin trial is not the result of any delay caused by the respondent." § 394.915(2), Fla. Stat. (1999). Furthermore, section 394.916(1) does not distinguish between the ex parte or adversarial probable cause determinations for purposes of calculating the thirty-day time limit for trial.
In the instant case, the due process problems we have discussed above may well have been alleviated if the court had held an adversarial probable cause hearing early in the proceedings and nearer the time the appellee's criminal sentence expired.[10] As noted above, the provision for *828 an adversarial probable cause determination appears to have been intended for such circumstances. However, we are not presented with that issue here since no adversarial probable cause hearing was ever conducted during the appellee's continued detention after the expiration of his sentence.

Mandatory v. Jurisdictional
While we conclude that the time provisions regarding the holding of a trial were meant to be mandatory, we do not believe that the thirty-day period was intended as a rigid jurisdictional bar to further proceedings. In addition to the provision for an adversarial probable cause determination, section 394.916(2) provides that "[t]he trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the interests of justice, when the person will not be substantially prejudiced." By this language, the Legislature demonstrated that there will be instances when the trial court will retain jurisdiction beyond the thirty-day time period. In cases where the alleged sexually violent predator will not be substantially prejudiced, a trial court is given authority to grant a continuance when one of the parties shows good cause or the court determines that the interests of justice so dictate.
While statutory language can be construed to be both mandatory and jurisdictional, it does not follow that mandatory language must always be construed as jurisdictional. Similarly, we conclude here that although the language requiring the trial to be held within thirty days is mandatory, the language is not necessarily jurisdictional because there are limited instances where the court would retain jurisdiction beyond the thirty-day time period, most notably where a continuance for good cause or in the interest of justice has been granted under section 394.916(2).
The district courts in Kinder, Reese, and Osborne also made determinations that the language was not jurisdictional. Kinder, however, is the only decision that appears to recognize the analytical distinction between jurisdiction and whether the provision should be construed as mandatory or directory. See Kinder, 779 So.2d at 515 (holding that the thirty day time limit was mandatory, but not jurisdictional).[11]
Furthermore, because these indefinite commitments are supposed to ordinarily take place while the person is still incarcerated, there will be situations where the trial court would make a probable cause determination, but the thirty-day time period runs while the respondent is still incarcerated. Under those circumstances, a "mandatory" trial would not have occurred, and the State may be entitled to a continuance, because the respondent would not be substantially prejudiced. A person already imprisoned would obviously carry a greater burden to demonstrate prejudice *829 than one who would be free but for the Ryce Act detention. Thus, in such circumstances, the trial court would retain jurisdiction even though the mandated time period for trial had expired.

RIGHT TO COUNSEL
We also note that this case also presents substantial constitutional concerns involving delay in appointing counsel for defendants facing continued detention after expiration of their criminal sentences. Under the Ryce Act, it is not clear when a potential sexually violent predator should be appointed counsel. The Ryce Act simply states that counsel should be provided "[a]t all adversarial proceedings under this act," but does not indicate when in the process counsel should be appointed. § 394.916(3), Fla. Stat. (1999). However, we conclude that for the appointment of counsel to be meaningful, it is apparent that the appointment would have to occur as soon as proceedings are initiated, and certainly prior to or early in the thirty-day time period for bringing the case to adjudication.[12] The appointment of counsel represents a significant step in assuring that the proceedings meet constitutional muster.

*830 CONCLUSION
We conclude, as did the Second District in Kinder, that based upon the unambiguous and plain meaning of language used in the Ryce Act, as well as the obvious constitutional concerns of the Legislature in enacting a scheme for a person's involuntary and indefinite commitment, that the Legislature intended the time period for bringing the commitment issue to trial is critical to the validity of the overall scheme and is therefore mandatory, although not jurisdictional. This construction is also consistent with the Legislature's apparent intention that Ryce Act proceedings be conducted well before a sexual offender's prison sentence expires, so as to minimize the risk of either indefinite detentions without a trial, or the premature release of Ryce Act offenders.[13]
Accordingly, for the reasons stated in this opinion, we affirm the judgment of the trial court. We also approve the Second District's opinion in Kinder and disapprove Reese and Osborne to the extent they are inconsistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and SHAW, PARIENTE, LEWIS, and QUINCE, JJ., concur.
HARDING, Senior Justice, dissents with an opinion, in which WELLS, J., concurs.
HARDING, Senior Justice, dissenting.
I respectfully dissent. I would find the thirty-day time period in section 394.916(1), Florida Statutes (Jimmy Ryce Act) to be directory rather than mandatory. I would adopt the following reasoning of the Fifth District Court of Appeal:
We next considered Osborne's contention that the statutory time period is mandatory, and thus jurisdictional, because the Legislature used the word "shall" in the provision establishing the thirty-day time period, although it provided no consequences for the State's failure to comply. § 394.916, Fla. Stat. (1999). Our Supreme Court has acknowledged on multiple occasions that, in appropriate circumstances, the term "shall" can merely be directory. For example, in Schneider v. Gustafson Indus., Inc., 139 So.2d 423, 424 (Fla.1962), the court noted that statutes setting the time when a task is to be done are regarded as merely directory where no provision restraining the doing of it after that time is included. See also Belcher Oil Co. v. Dade County, 271 So.2d 118, 121 (Fla.1972) (noting that although "shall" normally has a mandatory connotation, in proper cases it may be construed as permissive only); Comcoa, Inc. v. Coe, 587 So.2d 474, 477 (Fla. 3d DCA 1991) (holding that according to the context and surrounding circumstances, a statutory "shall" is to be read as "may" and vice versa). Applying this case law to the instant facts, we construe the instant language as being directory because the quoted provision is a time provision with no specified consequences for non-compliance. The First and Fourth Districts have reached the same conclusion.
State v. Osborne, 781 So.2d 1137, 1139 (Fla. 5th DCA 2001). At least one other *831 state court has reached a similar conclusion. See People v. Curtis, 177 Cal.App.3d 982, 223 Cal.Rptr. 397 (1986). In Curtis, the court reasoned:
"[I]n evaluating whether a provision is to be accorded mandatory or directory effect, courts look to the purpose of the procedural requirement to determine whether invalidation is necessary to promote the statutory design."
With respect to time-limit statutes the general rule is that "requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed." ... [A] proper test of legislative intent is to focus on the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment.
....
We ... conclude the 30-day statute at issue was designed to serve a public administrative purpose and was not intended to provide protection or benefit to defendant. Moreover, we believe the previously described purposes of section 6316.2 would be defeated if the time provision at issue were given mandatory effect. It would be anomalous to construe a statute designed to prevent the release of dangerous people into the community in such a way that an inconsequential violation of a time requirement would allow the very release the statute is designed to prevent.
223 Cal.Rptr. at 399-400 (citations omitted). The Jimmy Ryce Act is similar to California's mentally disordered sex offender statute in that its purpose is to protect Floridians from sexually violent predators.[14] The majority's opinions in this case and in State v. Kinder, 830 So.2d 832 (Fla. 2002), will have the very effect that the California court warned against: dangerous people will be released into the community due to an inconsequential violation of a time requirement.
WELLS, J., concurs.
NOTES
[1] The Ryce Act received its name from the name of a child victim in a capital murder and sexual abuse case. We have upheld the constitutionality of the act as to various challenges in Westerheide v. State, 831 So.2d 93 (Fla.2002).
[2] The Kansas Legislature adopted its civil commitment of sexual predators act in 1994. Kelly A. McCaffrey, The Civil Commitment of Sexually Violent Predators in Kansas: A Modern Law For Modern Times, 42 U. Kan. L.Rev. 887, 888 (1994); Kan. Stat. Ann. §§ 59-29a01-59-29a15 (1994 & Supp.2001). In turn, Kansas's act was apparently modeled after the Washington Community Protection Act, sections 71.09.010-.902, Washington Revised Code (1998), because the Washington Supreme Court had upheld the constitutionality of its act in In re Young, 122 Wash.2d 1, 857 P.2d 989, 1018 (1993). McCaffrey, supra, at 889. The relevant portion of the Kansas act, which is nearly identical to Florida's Ryce Act except for the specific amount of time allowed for trial, reads:

Within 60 days after the completion of any hearing held pursuant to K.S.A. 59-29a05 and amendments thereto, the court shall conduct a trial to determine whether the person is a sexually violent predator. The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced.
Kan. Stat. Ann. § 59-29a06 (Supp.2001).
[3] When the Ryce Act was first passed, it was placed in chapter 916, Florida Statutes, which pertains to mentally ill defendants in criminal cases. See §§ 916.31-.49, Fla. Stat. (Supp.1998). Because the U.S. Supreme Court had made a major distinction between "civil" commitments and criminal proceedings in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), there was initial concern about the placement of the Ryce Act in a criminal statute. In 1999, based on comments from state attorneys and other persons involved with the act, the Legislature moved the Ryce Act to chapter 394 pertaining to civil mental health commitments. A Senate staff analysis for the 1999 changes noted that "double jeopardy and ex post facto challenges would have a better chance of being thwarted if this civil procedure was not intermixed with other laws in a statutory chapter that pertains to criminal defendants." See Fla. S. Comm. on Child. & Fams., CS for SB 2192 (1999), Staff Analysis 15 (Mar. 30, 1999). The thirty-day time limit for trial initially appeared in section 916.36, Florida Statutes (Supp.1998), and was moved to section 394.916, Florida Statutes (1999).
[4] The Supreme Court has recently examined the Kansas act again in Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).
[5] See also, e.g., Candace J. Samolinski, Kansas Law Used for Jimmy Ryce Act, Tampa Trib. (Mar. 26, 1998) at 18.
[6] In the instant case, no continuance was granted pursuant to section 394.916(2), which allows a party to request a continuance for good cause where the respondent will not be substantially prejudiced. For an illustrative comparison, see Meadows v. Krischer, 763 So.2d 1087, 1089-90 (Fla. 4th DCA 1999), where the State requested a continuance before the thirty days had elapsed and the court decided that a brief continuance was necessary so that the trial court and the parties could review the procedures under "the new and somewhat confusing" Ryce Act. See id. In rejecting the respondent's claim that he was not brought to trial within the time period required by the Ryce Act, the Fourth District held that there had been an adequate showing of good cause for the brief continuance and the respondent had not established any substantial prejudice arising from the continuance. See id.
[7] We would note that while the Legislature intended that the Ryce Act operate in this way, there is evidence that in practice this is not occurring and that often people are being detained for long periods after their scheduled release date without being taken to trial. The Florida Legislature's Office of Economic and Demographic Research has started releasing statistics which list the procedural distribution of people in the process of being committed under the Ryce Act. See "End of the Month Status of Probable Cause Cases" and "Time from Referral to Trial to Commitment or Release," http://www.myflor ida.com/edr/Conferences/Criminal-Justice/predator.htm. According to the statistics, the overwhelming majority of the people currently in the system are detainees awaiting trial after the expiration of their sentences. While the numbers do not indicate the cause of the delay, the number of persons being detained has consistently increased, which indicates that compliance with the thirty-day time limit for trial is rarely being practiced.
[8] On the other hand, when circumstances cause a legitimate delay but the inmate is scheduled to be released, the statute provides that a person can still be detained pending trial.
[9] The facts in Reese are somewhat different from those present in the instant case. In Reese, the respondent was scheduled to be released on September 1, 2000, but on August 30, 2000, the State Attorney petitioned the trial court to have the respondent committed pursuant to the Ryce Act. See id. at 656. On the same day, the trial judge entered an order finding probable cause that the respondent was a sexual predator, and directed the Department of Corrections to deliver him into the custody of the Department of Children and Families. See id. Additionally, the trial court appointed counsel for the respondent and scheduled an adversarial hearing for October 3, 2000. See id. At the adversarial hearing, the trial court apparently found probable cause again that the respondent was a sexual predator. See id. On October 23, 2000, the respondent moved to dismiss the proceedings because he had not been brought to trial within thirty days of the initial September 1, 2000, ex parte finding of probable cause. See id. The First District noted that "[b]y its terms, the Act requires an adversarial probable cause hearing only where the respondent is not tried within 30 days of the initial ex parte probable cause determination and the failure to begin the trial is not the result of a delay caused by the respondent." Id. at 657. Therefore, once a judge finds probable cause after an adversarial hearing pursuant to section 394.915(2), the thirty-day clock for commencement of the trial in section 394.916(1) is reset and begins to run again. The respondent in Reese, who had the benefit of counsel on the same day that the court made its initial ex parte probable cause determination, moved for dismissal "only 20 days after the court had determined, after an adversarial proceeding, that there was probable cause that Reese is a sexually violent predator." Id. Thus, in Reese the thirty-day time limit for trial had not yet run when the respondent filed his motion to dismiss. By way of comparison, in the instant case the respondent was not appointed counsel or served with the petition until six days before the time for trial was set to expire. The State did not request any continuance and the respondent was thereafter detained for an additional two months without a trial or other adversary hearing before the petition was dismissed.
[10] When the Washington Supreme Court examined its similar sexual offender civil commitment statute, which lacked a time limit for holding an adversarial hearing, it determined that constitutional due process concerns required an adversarial probable cause hearing to be held within seventy-two hours of the initial detention. See In re Young, 122 Wash.2d 1, 857 P.2d 989, 1011 (1993). Further, many other states, including Kansas, have statutes that contain the requirement that an adversarial probable cause hearing or its equivalent occur within seventy-two hours of a defendant's detention. See, e.g., Ariz.Rev. Stat. Ann. § 36-3705 (Supp.2001); Iowa Code § 229A.5 (2001); Kan. Stat. Ann. § 59-29a-05 (Supp.2001); N.D. Cent.Code § 25-03.3-11 (2002); S.C.Code Ann. § 44-48-80 (West 2002).

Florida, by way of contrast, only requires the multidisciplinary team to give its recommendation and assessment to the state attorney within seventy-two hours of the person's detention. § 394.9135(2), Fla. Stat. (1999). Thus, unlike these other states that require an adversarial hearing within seventy-two hours of detention, Florida's use of a seventy-two hour time period after detention provides no explicit due process protection and only speeds the process by which the team makes a recommendation to the state on whether to pursue the case. However, by providing the seventy-two hour period, it is apparent that the Legislature was aware of the same concerns that other states had addressed more directly.
[11] The First District and the Fifth District appear to have treated the analysis of whether the language was "jurisdictional" or "mandatory" interchangeably. See Reese, 773 So.2d at 657 (stating that because "commencement of trial may be extended upon `a showing of good cause,' it appears that the time limitation is directory, and does not establish a procedural bar, so as to divest the trial court of jurisdiction to proceed"); Osborne, 781 So.2d at 1139 (noting that the court "considered Osborne's contention that the statutory time period is mandatory, and thus jurisdictional").
[12] To deal with the due process problems regarding the timing of the adversarial probable cause hearing and the appointment of counsel, the Fourth District has suggested several procedural rules to be used in Ryce Act proceedings. In Valdez v. Moore, 745 So.2d 1009 (Fla. 4th DCA 1999), three Jimmy Ryce defendants petitioned the Fourth District for habeas relief. The defendants had completed their prison sentences but had been held for nine months pursuant to the Ryce Act without a hearing. See State v. Kobel, 757 So.2d 556, 559 (Fla. 4th DCA 2000) (describing Valdez facts). The Fourth District concluded that due process requires certain minimum procedures for civil commitment, including an adversarial probable cause hearing with the opportunity to be heard, present evidence, and cross-examine witnesses. See Valdez, 745 So.2d at 1012. The court stated that "it constitutes a denial of due process to confine persons, who have already completed their sentences, without an adversarial probable cause hearing." Valdez, 745 So.2d at 1012. The court ordered that the defendants be released unless an adversarial probable cause hearing was conducted within five days of the opinion.

In Meadows v. Krischer, 763 So.2d 1087, 1090 n. 4 (Fla. 4th DCA 1999), the Fourth District interpreted Valdez's five-day requirement as being "upon request." The Fourth District further added:
We are concerned about the late appointment of counsel in this case since petitioner was held under the Ryce Act for nearly three weeks before he was appointed counsel. We hold that at a minimum, a Ryce Act respondent should be advised of the right to appointed counsel when served with the order or warrant for custodial detention. This could be accomplished within the warrant itself or by separate document served by the court. By way of analogy, the Baker Act requires that within one working day after the filing of a petition for involuntary commitment, the court must appoint the public defender, unless the respondent is otherwise represented by counsel.
Id. at 1091 n. 5.
Finally, in State v. Kobel, 757 So.2d 556, 561 (Fla. 4th DCA 2000), the Fourth District stated:
A Ryce Act respondent might choose to forego an adversarial probable cause hearing and insist on a trial on the merits as early as possible. Requiring that an adversarial probable cause hearing be held within five days after a request for one places that decision in the hands of the party best equipped to decide whether or not to exercise that right.
Later the court noted:
Section 394.9135(3) contemplates that a judge will make an ex parte probable cause determination immediately after the state attorney's filing of a petition. We further hold that if the judge finds probable cause, the judge must also appoint an attorney for the respondent, if he is not already represented by counsel. Pursuant to Meadows, the state must serve a copy of the petition and the orders emanating from the ex parte probable cause determination on both the respondent and the appointed attorney.
Id. at 563 (citation omitted).
[13] The dissent expresses the concern that the Court's opinion will have the effect of releasing sexual offenders into the community based on a deadline for trial. However, if the Ryce Act operates the way the Legislature envisioned, these cases will be presented while offenders are still in prison. Clearly, the Legislature's goal was to protect the public in a way that did not violate the constitutional rights guaranteed to individuals who were potentially subject to a lifetime of civil commitment.
[14] Section 394.910, Florida Statutes, entitled "Legislative findings and intent," states:

The Legislature finds that a small but extremely dangerous number of sexually violent predators exist who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act, part I of this chapter, which is intended to provide short-term treatment to individuals with serious mental disorders and then return them to the community. In contrast to persons appropriate for civil commitment under the Baker Act, sexually violent predators generally have antisocial personality features which are unamenable to existing mental illness treatment modalities, and those features render them likely to engage in criminal, sexually violent behavior. The Legislature further finds that the likelihood of sexually violent predators engaging in repeat acts of predatory sexual violence is high. The existing involuntary commitment procedures under the Baker Act for the treatment and care of mentally ill persons are inadequate to address the risk these sexually violent predators pose to society. The Legislature further finds that the prognosis for rehabilitating sexually violent predators in a prison setting is poor, the treatment needs of this population are very long term, and the treatment modalities for this population are very different from the traditional treatment modalities for people appropriate for commitment under the Baker Act. It is therefore the intent of the Legislature to create a civil commitment procedure for the long-term care and treatment of sexually violent predators.