# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D23-0780
LT Case No. 2019-CA-000231

———————————————

ADVENTIST HEALTH
SYSTEM/SUNBELT, INC., D/B/A
FLORIDA HOSPITAL ALTAMONTE
AND WILLIAM HUETHER, III, M.D.,

     Petitioners,

     v.

SALLY MACHALEK AND MATTHEW
APTER, M.D.,

     Respondents.

———————————————

Petition for Writ of Certiorari, A Case of Original Jurisdiction.

Christian P. Trowbridge, Craig S. Foels, and Dinelia A. Concepcion, of Estes, Ingram, Foels & Gibbs, P.A., Maitland, for Petitioners.

Andres I. Beregovich, of The Beregovich Law Firm, P.A., Orlando, for Respondent, Sally Machalek.

No appearance for Respondent, Matthew Apter, M.D.

October 6, 2023

SOUD, J.

Respondent Sally Machalek ("Ms. Machalek") brought suit against Petitioners Adventist Health System/Sunbelt, Inc., d/b/a Florida Hospital Altamonte ("Florida Hospital"), and William Huether, III, M.D. ("Dr. Huether") for alleged medical malpractice. Petitioners filed motions to dismiss in the trial court alleging Respondent failed to timely comply with presuit requirements. The motions were denied. Thereafter, Petitioners filed their Petition for Writ of Certiorari *sub judice*, asking that we quash the trial court's amended orders denying Petitioners' motions to dismiss and dismiss the case with prejudice.

We dismiss the petition because the trial court's denial of Petitioners' motions to dismiss is not reviewable by certiorari.

I.

Ms. Machalek was hospitalized at Florida Hospital in August 2015 when Dr. Huether, as a consulting general surgeon, examined her and ordered diagnostic testing. The next day Respondent Dr. Matthew Apter ("Dr. Apter"), as a consulting gastroenterologist, diagnosed Ms. Machalek and advised Dr. Huether of his findings. Based thereon, Dr. Huether performed surgery on Ms. Machalek the next morning.

Thereafter, and as part of the presuit process required by the Medical Malpractice Act (chapter 766, Florida Statutes (2018)), Ms. Machalek served her notices of intent to initiate litigation, including the corroborating expert affidavit of Dr. Ira Shafran, a gastroenterologist. His qualification as one in the same specialty as Dr. Huether was disputed. After filing this medical malpractice lawsuit,[1] Ms. Machalek later served a September 2019

---

[1] Ms. Machalek amended her complaint, which was deemed filed on February 22, 2022, adding Dr. Apter as a defendant below and claiming fraudulent concealment against him.

2

corroborating affidavit from Stephen Cohen, M.D., a general surgeon.[2]

Petitioners ultimately moved to dismiss this case with prejudice pursuant to section 766.206, Florida Statutes. Specifically, Petitioners asserted that Ms. Machalek discovered the basis of her claim during her December 19, 2016 medical appointment with Dr. Apter and a conversation that was a part thereof. Importantly, Petitioners dispute that this conversation—as recorded by Ms. Machalek—ever took place. Nonetheless, they claim the statute began to run on this date. As a result, Petitioners argue Dr. Cohen's affidavit was served outside the two-year statute of limitations, which expired by Petitioners' reckoning no later than June 17, 2019 (as tolled ninety days pursuant to section 766.106(4) and extended an additional ninety days by Ms. Machalek pursuant to section 766.104(2)). Ms. Machalek disagrees and claims she learned of the basis of her medical malpractice action at a later time.

Following a hearing, the trial court denied Petitioners' motions to dismiss.[3] This petition for writ of certiorari followed.

## II.

"The common law writ of certiorari is an 'extraordinary remedy.'" *Univ. of Fla. Bd. of Trs. v. Carmody*, 48 Fla. L. Weekly S150 (Fla. July 6, 2023). It provides this Court "the prerogative to reach down and halt a miscarriage of justice where no other remedy exists." *Id.* Certiorari review, which is entirely discretionary, has never been a substitute for a postjudgment

---

[2] The trial court ultimately entered a stipulated order finding Dr. Shafran's affidavit insufficient as a matter of law.

[3] This Court quashed the trial court's orders denying dismissal and remanded the case for the trial court to make the requisite findings as to whether Plaintiff/Respondent complied with the Chapter 766 presuit requirements. Thereafter, the trial court entered its Amended Order Denying Motion to Dismiss as to each Petitioner's motion.

appeal and is "available only in very limited circumstances." *Id.* "[T]he scope of certiorari review is more constrained than that of direct appellate review, for '[t]he writ never was intended to redress mere legal error ....'" *Id.*; *see also Abbey v. Patrick*, 16 So. 3d 1051, 1053–54 (Fla. 1st DCA 2009) ("[Certiorari] is not a remedy that can be used simply because the order in question is not appealable. . . .").[4]

To be entitled to certiorari relief from the denial of their motions to dismiss, Petitioners must establish (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on post-judgment appeal. *See Carmody,* 48 Fla. L. Weekly S150. The last two requirements are often combined into the concept of "irreparable harm." *Id.* We must first consider the final two elements because irreparable harm is jurisdictional and must be found before we may decide whether there has been a departure from the essential requirements of the law. *See id.; see also Holmes Reg'l Med. Ctr., Inc. v. Dumigan*, 151 So. 3d 1282, 1284 (Fla. 5th DCA 2014); *Allan & Conrad, Inc. v. Univ. of Cent. Fla.*, 961 So. 2d 1083, 1087 (Fla. 5th DCA 2007).

Generally, certiorari review is not available to seek review of a trial court's denial of a motion to dismiss. *See Carmody*, 48 Fla. L. Weekly S150.  Nonfinal orders subject to interlocutory review are limited to those set forth in Rule 9.130 of the Florida Rules of Appellate Procedure. *Id.* This "reduces the need for common law certiorari." *Abbey,* 16 So. 3d at 1053. In this case, the trial court's denial of Petitioners' motions to dismiss does not fall within any of the classes of orders enumerated in Florida Rule of Appellate

---

[4] "Florida judicial policy limits common law certiorari review so as to avoid 'piecemeal review of nonfinal trial court orders [that] will impede the orderly administration of justice.'" *DeSantis v. Fla. Educ. Ass'n*, 313 So. 3d 151, 153 (Fla. 1st DCA 2020) (quoting *Jaye v. Royal Saxon, Inc.*, 720 So. 2d 214, 215 (Fla. 1998)).

Procedure 9.130.[5] Thus, the Florida Supreme Court has cautioned, "[I]t is generally inappropriate for district courts to review an order denying a motion to dismiss, aside from those specified under rule 9.130 . . . ." *Citizens Prop. Ins. Corp. v. San Perdido Ass'n, Inc.*, 104 So. 3d 344, 352 (Fla. 2012).

However, "Florida courts have created an 'exception . . . when the presuit requirements of a medical malpractice statute are at issue' since the 'purpose' of the Medical Malpractice Act is 'to avoid meritless claims and to encourage settlement for meritorious claims.'" *Carmody*, 48 Fla. L. Weekly S150 (quoting *Williams v. Oken*, 62 So. 3d 1129, 1133–34 (Fla. 2011)). As the Florida Supreme Court reiterated in *Carmody*, "Florida courts have permitted certiorari review **solely** to ensure that the procedural aspects of the presuit requirements are met." *Id.* (emphasis added). For example, certiorari review is permitted to review "whether a plaintiff—before the filing of the medical malpractice lawsuit—gave the defendant 'advance notice' and provided an 'opportunity [for the defendant] to examine [the] claim.' Thus, a district court can grant certiorari review **to verify that the plaintiff submitted the corroborating affidavit** of an expert witness."

---

[5] We are aware that contemporaneously with the issuance of its decision in *Carmody*, the Florida Supreme Court issued its opinion in *In re Amendment to Florida Rule of Appellate Procedure 9.130*, 367 So. 3d 1204 (Fla. 2023), by which the Court amended Florida Rule of Appellate Procedure 9.130(a)(3) to provide for interlocutory review of nonfinal orders that "deny a motion to dismiss on the basis of **the qualifications of a corroborating expert witness** under subsections 766.102(5)–(9), Florida Statutes." Fla. R. App. P. 9.130(a)(3)(H) (emphasis added). However, the issue before us is not the qualification of Dr. Cohen as one in the same specialty as Dr. Huether, but rather whether his corroborating affidavit was provided to Petitioners before the expiration of the statute of limitations. Further, Petitioners here have traveled under a Petition for Writ of Certiorari. They have not filed any notice of supplemental authority following *Carmody* and have made no reference to the amended Rule.

5

*Id.* (emphasis added) (citation omitted).[6] Accordingly, "[c]ertiorari may be an appropriate remedy if the error is one that resulted in the **deprivation of the right to the process itself**." *Abbey*, 16 So. 3d at 1054 (emphasis added).

Importantly, *Carmody* does not dictate that every decision a trial court makes involving the execution of the presuit process is reviewable by certiorari. Certiorari will not lie when a trial judge has afforded a defendant the statutory presuit process required by the Medical Malpractice Act but has merely made a mistake of law or fact in the course of carrying it out. *See Abbey*, 16 So. 3d at 1055.

Petitioners *sub judice* do not argue that Dr. Cohen is unqualified to submit the corroborating expert affidavit (as in *Carmody*). Rather, they contend that Ms. Machalek failed to provide the affidavit—and thus comply with the presuit requirements—within the two-year statute of limitations. As such, the issue before us simply is whether the statute of limitations bars Ms. Machalek's cause of action.

Certiorari is unavailable to permit our review of the trial court's denial of Petitioners' motions to dismiss sounding in the statute of limitations. *See Stemerman, Lazarus, Simovitch, Billings, Finer & Ginsburg, M.D.'s P.A. v. Fuerst*, 4 So. 3d 55, 57 (Fla. 3d DCA 2009). Just because this affirmative defense is asserted within the context of a medical malpractice case does not render this case as one falling within the exceptions carved out by Florida courts allowing certiorari review with respect to presuit requirements in medical malpractice actions. *See id.* ("[T]he issue before this Court is whether the statute of limitations barred the respondents' cause of action, not the failure to comply with the pre-suit notice requirements."). An error—if any—regarding the timeliness of the corroborating affidavit did not deprive Petitioners of their rights under the medical malpractice presuit screening statutes. *See Abbey*, 16 So. 3d at 1051.

---

[6] As discussed at n.5, *supra*, Rule 9.130 now expressly permits interlocutory appeal of a trial court's denial of a motion to dismiss based on the qualifications of a corroborating expert witness. *See* Fla. R. App. P. 9.130(a)(3)(H).

## III.

As did the Third District in *Fuerst*, we conclude the trial court's denial of Petitioners' motions to dismiss "is . . . not one suitable for certiorari review." *Fuerst*, 4 So. 3d at 57. Accordingly, the Petition for Writ of Certiorari is DISMISSED.

It is so ordered.

MACIVER, J., concurs.
KILBANE, J., concurs specially, with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

7

KILBANE, J., concurring specially.

I concur in the dismissal of Adventist's petition for writ of certiorari. All that remained for the trial court to determine was whether the substituted affidavit, filed approximately nine months after filing suit, was provided before the statute of limitations ran. Such a determination is not subject to certiorari review.[1] Based on current precedent, it was appropriate for the trial court to make such a determination in spite of the mandatory language of section 766.206(2), Florida Statutes (2018). I write to address that precedent and its disregard of the plain text of Florida's Medical Malpractice Act's ("MMA") presuit requirements.

The Florida Supreme Court's express adoption of the "supremacy-of-text" principles in statutory construction, *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946–47 (Fla. 2020), coupled with its recent decision in *University of Florida Board of Trustees v. Carmody*, 48 Fla. L. Weekly S150 (Fla. July 6, 2023), make clear that the text of the presuit requirements of the MMA mean what they say: failure to comply equals dismissal. When provisions of the MMA are read in pari materia, there is little

---

[1] In July 2023, the Florida Supreme Court, *sua sponte*, amended "Florida Rule of Appellate Procedure 9.130(a)(3) to provide for interlocutory review of nonfinal orders that deny a motion to dismiss on the basis of the qualifications of a corroborating witness under subsections 766.102(5)-(9), Florida Statutes." *Univ. of Fla. Bd. of Trs. v. Carmody,* No. SC2022-0068, 48 Fla. L. Weekly S150 (Fla. July 6, 2023); *In re Amend. to Fla. Rule of App. Proc. 9.130,* 367 So. 3d 1204 (Fla. 2023). Section 766.102(5)-(9) specifically outlines the requirements for who may qualify to give standard of care testimony dependent upon who allegedly committed the negligence, i.e., the sufficiency of the presuit affidavit. The new rule does not purport to cover the full range of statutes [§§ 766.201-.212, .1065] under which a motion to dismiss may be filed pursuant to section 766.206(2), Florida Statutes. The instant case was heard before the decision in *Carmody* and enactment of the new rule.

8

doubt as to the mandatory nature of the text and the process by which medical negligence claims must be brought in this state. However, years of precedent which ignore this same text in the name of access to courts—a valid and important right, but one properly subject to reasonable restrictions—has eroded the judiciary's ability to enforce the will of the people as explicitly expressed by the Legislature.

To interpret the meaning of statutory texts, *Ham* counsels:

> [W]e follow the "supremacy-of-text principle"—namely, the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts 56* (2012). We also adhere to Justice Joseph Story's view that "every word employed in [a legal text] is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157-58 (1833), *quoted in* Scalia & Garner, *Reading Law* at 69).

308 So. 3d at 946–47 (alterations in original).

The Legislature specifically stated and codified its intent in creating the MMA, which is the "public policy" of the State of Florida.[2] Section 766.201(1)(a)-(b) details the Legislature's

---

[2] The Florida Supreme Court has expressly recognized the MMA as a legislative statement of public policy. *See Franks v. Bowers*, 116 So. 3d 1240, 1241 (Fla. 2013). "Public policy is determined by the legislature through its statutory enactments." *Saunders v. Saunders*, 796 So. 2d 1253, 1254 (Fla. 1st DCA 2001) (citing *Univ. of Miami v. Echarte*, 618 So. 2d 189, 196 (Fla. 1993)). Express provisions of legislative intent codified in a statute

9

findings that increased medical malpractice insurance premiums were primarily caused by increased loss payments to claimants, the functional unavailability of medical malpractice insurance for some physicians, and increased care costs to patients. Noting "the public need for quality medical services" and that "[t]he high cost of medical negligence claims in the state can be substantially alleviated by requiring early determination of the merit of claims," § 766.201(1)(c)-(d), Fla. Stat., the Legislature explicitly stated its intention to create a process to extinguish unviable claims early:

> (2) It is the intent of the Legislature to provide a plan for prompt resolution of medical negligence claims. Such plan shall consist of two separate components, presuit investigation and arbitration. **Presuit investigation shall be mandatory and shall apply to all medical negligence claims and defenses.** Arbitration shall be voluntary and shall be available except as specified.
>
> (a) Presuit investigation **shall include**:
>
> 1. Verifiable requirements that reasonable investigation precede both malpractice claims and defenses in order to eliminate frivolous claims and defenses.
>
> 2. Medical corroboration procedures.

§ 766.201(2), Fla. Stat. (emphasis added).

Various sections of chapter 766 spell out the specific presuit requirements and duties both parties must fulfill throughout the presuit process. At the conclusion of that process, either before or after suit is filed, section 766.206 provides a process by which that participation may be challenged. A finding that either party did not comply with the reasonable investigation requirements of sections 766.201-.212 has mandatory consequences and potential sanctions. Section 766.206, Florida Statutes, provides in pertinent part:

---

constitute "public policy" of the state. *See Dinkins v. Dinkins*, 120 So. 3d 601, 603 (Fla. 5th DCA 2013).

(1) After the completion of presuit investigation by the parties pursuant to s. 766.203 and any discovery pursuant to s. 766.106, any party may file a motion in the circuit court requesting the court to determine whether the opposing party's claim or denial rests on a reasonable basis.

(2) **If the court finds that the notice of intent to initiate litigation mailed by the claimant does not comply with the reasonable investigation requirements of ss. 766.201-766.212, including a review of the claim and a verified written medical expert opinion by an expert witness as defined in s. 766.202, or that the authorization accompanying the notice of intent required under s. 766.1065 is not completed in good faith by the claimant,** *the court shall dismiss the claim*, and the person who mailed such notice of intent, whether the claimant or the claimant's attorney, is personally liable for all attorney's fees and costs of the defendant or the defendant's insurer.

(Emphasis added). The word "shall" as used in section 766.206(2) is mandatory and not permissive, particularly because "it refers to an action preceding the denial of a substantive right." *State v. Goode*, 830 So. 2d 817, 824 (Fla. 2002). When viewed in its context, the legislature made itself clear: the two-step presuit investigation process is mandatory to bring a medical negligence lawsuit in this state, and failure to participate in that process requires dismissal. *See* §§ 766.201, .206, Fla. Stat.; *see also Goode*, 830 So. 2d at 823 (noting that the proper "interpretation 'depends upon the context in which ["shall"] is found and upon the intent of the legislature as expressed in the statute'" (quoting *S.R. v. State*, 346 So. 2d 1018, 1019 (Fla. 1977))).

In spite of this clear statutory language and Florida courts' adherence to the supremacy-of-text principle, much of the case law stands in stark contrast due to what seems to be a perceived conflict between the clear Legislative directive and Florida's constitutional protection for access to courts. *See* Art. I, § 21, Fla. Const. Seemingly raised for the first time in the medical negligence context in *Carter v. Sparkman*, 335 So. 2d 805 (Fla.

1976), and notwithstanding the supreme court in that case pronouncing that the medical negligence statutes did not place unreasonable restrictions on citizens' access to the courts, later courts have regularly departed from the plain text in the name of such access. *See, e.g., Morris v. Muniz*, 252 So. 3d 1143 (Fla. 2018) (citing access to courts no less than three times in requiring trial court to make a finding of prejudice to defendant before dismissing case based on failure to comply with presuit requirements); *Williams v. Oken*, 62 So. 3d 1129 (Fla. 2011) (certiorari not available to challenge plaintiff's presuit expert for not being in same specialty as defendant physician, as required by statute); *Kukral v. Mekras*, 679 So. 2d 278 (Fla. 1996) (under "liberal interpretation" of MMA, plaintiff's failure to comply with presuit requirements and timeframes, including plaintiff's failure to provide mandatory expert opinion until a month prior to trial (instead of statutory ninety-day period), was excusable as long as requirements were met prior to expiry of statute of limitations); *Ingersoll v. Hoffman*, 589 So. 2d 223 (Fla. 1991) (defendant's assertion on first day of trial that plaintiff's failure to comply with presuit requirements was "waived" as "prejudicial" to plaintiff); *N. Broward Hosp. Dist. v. Kalitan*, 219 So. 3d 49, 56 (Fla. 2017) (extending the reasoning in *McCall* to find the statutory caps applicable in personal injury cases were also unconstitutional as violative of the equal protection clause as they did "not bear a rational relationship to the Legislature's *stated* interest in addressing the medical malpractice crisis." (emphasis added)); *Est. of McCall v. U.S.*, 134 So. 3d 894 (Fla. 2014) (disregarding the stated factual findings of the legislature in ruling the statutory cap on wrongful death noneconomic damages recoverable in a medical malpractice action violated the equal protection clause of the Florida Constitution).

In essence, Florida courts have determined that because the presuit process restricts a plaintiff's ability to bring medical malpractice claims, we "must construe the medical malpractice presuit screening requirements 'in a manner that favors access to courts.'" *Morris*, 252 So. 3d. at 1146 (quoting *Patry v. Capps*, 632 So. 2d 9, 13 (Fla. 1994)). While this precept cannot be ignored, the act of construing statutory text still requires "analyz[ing] and explain[ing] the meaning of (a sentence or passage)." *Construe, Black's Law Dictionary* (11th ed. 2019). Courts have instead relied

on access to courts to right perceived wrongs thereby evading the statutory text altogether. While well intentioned, such decisions cannot stand.

Returning to the text, the Florida Supreme Court in *Carmody* states that the presuit requirements have a jurisdictional purpose. 48 Fla. L. Weekly S150 at *7. If a non-compliant case is filed pursuant to the MMA, the *Carmody* court observed that "no action shall be filed" and "the court shall dismiss the claim." *Id.* (quoting §§ 766.104(1), .206(2), Fla. Stat.). In light of our directive to follow the supremacy-of-text principle and *Carmody*'s clear statement that the presuit requirements "have served a jurisdictional purpose" both before and after the 2013 amendments, *id.*, there no longer should be any doubt about their jurisdictional import and the legislative mandate to dismiss claims that fail to comply with the reasonable investigation requirements of section 766.206(2).

Nonetheless, the *Carmody* court stopped short of overruling any precedent on this issue. *See id.* (cautioning that "the Legislature may generally limit what tort claims can be brought at state law, and how they are brought, as long as it does not run afoul of article 1, section 21 of Florida's Constitution"). However, as Justice Canady wrote in his dissent in *Morris*, a court's determination of whether a plaintiff filed a statutorily compliant claim "has nothing to do with roadblocks to court access." *Morris*, 252 So. 3d at 1167 (Canady, J., dissenting). This is supported in the plain language of section 766.206(2), which states that the court "shall dismiss." It does not say "shall dismiss *with prejudice*." Nothing prohibits plaintiffs from refiling their claims so long as the limitations period has not expired. *See Williams v. Campagnulo*, 588 So. 2d 982, 983 (Fla. 1991) (holding that corrective action regarding presuit requirements is only prohibited outside the limitations period); *Hosp. Corp. of Am. v. Lindberg*, 571 So. 2d 446, 449 (Fla. 1990) (explaining that where presuit notice filed same time as complaint, complaint subject to dismissal; plaintiff may subsequently file amended complaint asserting compliance with presuit notice and investigation requirements).

Reading into the statute an opportunity to "cure" or requiring defendants to prove prejudice goes beyond our constitutional authority. As then-Justice Polston explained:

[U]nder our constitutional system, it is the Legislature, not this Court, that is entitled to make laws as a matter of policy based upon the facts it finds. *See* art. II, § 3, Fla. Const.; art. III, § 1, Fla. Const. It is the Legislature's task to decide whether a medical malpractice crisis exists, whether a medical malpractice crisis has abated, and whether the Florida Statutes should be amended accordingly.

*Kalitan*, 219 So. 3d 63 (Polston, J., dissenting). Over time, it appears the courts have not focused on the statutory text and have instead rewritten it, a clear violation of the separation of powers. *See Westpark Preserve Homeowners Ass'n, Inc. v. Pulte Home Corp.*, 365 So. 3d 391, 394–95 (Fla. 2d DCA 2023) ("It is not within the power of the judicial branch to change the statute's language. Instead, '[t]he legislature is the proper branch of government to alter the statutory text.'" (alteration in original) (quoting *Freeman as Tr. of Fiddlesticks Land Tr. U/A/D Sept. 25, 1984 v. Berrin*, 352 So. 3d 452, 455 (Fla 2d DCA 2022))).

In sum, I perceive no jurisprudentially sound means of reconciling these past decisions with the supremacy-of-text principle or *Carmody*. As a result, their continued vitality deserves a close reexamination. "In a case where we are bound by a higher legal authority—whether it be a constitutional provision, a statute, or a decision of the Supreme Court—our job is to apply that law correctly to the case before us. When we are convinced that a precedent clearly conflicts with the law we are sworn to uphold, precedent normally must yield." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020); *accord Lawrence v. State*, 308 So. 3d 544, 550–51 (Fla. 2020).