929 So.2d 578 (2006)
XL SPECIALTY INSURANCE COMPANY, Petitioner,
v.
AIRCRAFT HOLDINGS, LLC, Respondent.
No. 1D05-4333.
District Court of Appeal of Florida, First District.
April 24, 2006.
Rehearing Denied May 31, 2006.
*579 Thomas M. Findley; Albert T. Gimbel; and Robert J. Telfer, III of Messer, Caparello & Self, P.A., Tallahassee, for Petitioner.
Gary A. Shipman and William E. Whitney of Dunlap, Toole, Shipman & Whitney, P.A., Tallahassee, for Respondent.
POLSTON, J.
Petitioner XL Specialty Insurance Company argues, in its petition for writ of certiorari, that the trial court's order compelling attorney-client privileged documents should be quashed because it misapplies the Florida Supreme Court's recent holding related to discovery of work product in first-party bad faith actions, Allstate Indemnity Co. v. Ruiz, 899 So.2d 1121 (Fla.2005), to attorney-client privileged communications. We agree, and therefore grant the petition and quash the trial court's August 29, 2005 order compelling discovery.[1]

I. BACKGROUND

A. Aircraft Holdings' Allegations

On August 14, 2003, a Learjet aircraft owned by Respondent Aircraft Holdings, LLC, and operated as an air ambulance crashed on landing at the airport in Cancun, Mexico. The insurance policy issued by XL covered the Learjet for physical damage under coverage F with a specifically stated "insured value" of $2.4 million. Under the policy definitions, "total loss" meant any physical damage loss for which *580 the costs to repair when added to the salvage value equals or exceeds the stated insured value. The aircraft was also covered by Endorsement 8 which "covers physical loss of or damage to the aircraft specified in Item 5 of the Declarations page caused by: . . . (e) Confiscation, nationalization, seizure, restraint [or] detention,. . . by or under the order of any Government . . . . or public or local authority."
Aircraft Holdings alleged that it promptly reported its aircraft to be an "estimated total loss," but that XL did little to investigate the extent of the damage. XL obtained a two-page preliminary repair estimate, which was admittedly incomplete. Aircraft Holdings retained the manufacturer of the aircraft, Learjet, to travel to Mexico to inspect the aircraft on multiple occasions. The damage reports were promptly supplied to XL, and indicated that the damage (which was worsening as the aircraft sat on the ground in Mexico) met the policy definition of "total loss."
The crash had damaged the airport's runway, and the Mexican authorities refused to allow the aircraft to be released for repairs in the United States until its damage claim was resolved. The XL policy covered Aircraft Holdings for damage to property of others such as the runway damage, but XL did not resolve the claim and obtain a release of the aircraft from Mexico. At the same time, XL did not offer any payment to Aircraft Holdings under Endorsement 8, which covered the aircraft for physical loss due to confiscation, seizure, restraint, or detention by the Mexican authorities.
In early March 2004, Aircraft Holdings demanded that XL furnish its own complete and current appraisal of the damage and proceed with an appraisal process specified under Condition 10 of the policy (which involved a referee to resolve differences between the appraisals). XL did not accept or reject the damage appraisal from Learjet and did not respond to Plaintiff's request to utilize the appraisal process.

B. Litigation

On April 14, 2004, Aircraft Holdings filed a complaint against XL alleging breach of contract (Count I) and a statutory cause of action for insurer bad faith pursuant to section 624.155, Florida Statutes (Count II). The trial court entered an order abating the bad faith claim on October 26, 2004, and entered judgment on the breach of contract claim in favor of Aircraft Holdings. At the time judgment was entered for Aircraft Holdings, awarding $2.4 million less the policy deductible of $10,000, XL had paid $2,390,000 into the registry of the court. The court also awarded attorney's fees to Aircraft Holdings. XL has appealed these rulings, which are currently separately on appeal to this court. This appeal does not address in any way the merits of Aircraft Holdings' allegations or the trial court's rulings in the breach of contract action.
Following entry of the orders in favor of Aircraft Holdings, the abatement of the bad faith claim under Count II was lifted by the trial court. Aircraft Holdings propounded discovery to XL on the bad faith issues, and XL filed numerous objections. The trial court entered an order on August 29, 2005, requiring that XL provide certain discovery:
ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY
THIS MATTER came on for hearing before the Court upon the Plaintiff's Motion to Compel dated June 3, 2005, filed by Plaintiff, Aircraft Holdings, LLC, and after hearing argument of counsel, and the Court being otherwise fully advised *581 in the premises, it is hereby ORDERED that the motion to compel is GRANTED in part, as follows:
1. The Court finds that under the recent Florida Supreme Court ruling in Allstate Indemnity Co. v. Ruiz, 899 So.2d 1121 (Fla.2005), the same discovery rules applicable to "third party" bad faith claims now apply to "first party" bad faith claims such as the case at bar. Therefore the discovery objections of attorney-client privilege and work product protection no longer apply on behalf of Defendant XL, for any documents and materials in the claim, and litigation files through the date of the resolution of the underlying breach of contract claim in favor of Plaintiff. Accordingly, all of XL's objections on the basis of attorney-client privilege and work product protection are hereby OVERRULED. In holding that discovery in first party and third party claims were to be treated identically, the Florida Supreme Court stated that "the pertinent issue is the manner in which the company has handled the suit including its consideration of the advice of counsel so as to discharge its mandated duty of good faith." Furthermore, the Court stated, "we hold that in connection with evaluating the obligation to process claims in good faith under Section 624.155, all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced in a first party bad faith action." Accordingly, the Court finds that in the case at bar, Plaintiff is entitled to discovery responses and production from Defendant XL of all materials contained in the files of XL, its counsel/third party administrators Kern & Wooley, LLP, and its Florida counsel Messer, Caparello & Self, P.A. generated up until the date that this Court granted summary judgment on January 6, 2005, including but not limited to all letters, correspondence, memoranda and emails, by and between those entities. The Court further finds that there is no basis to limit the discovery responses from Defendant XL to those materials generated before April 2004 when Plaintiff's breach of contract action was filed and the notice of insurer violation was filed with the Department of Financial Services. Rather, Ruiz specifically held that "all materials . . . created up to and including the date of resolution of the underlying disputed matter . . . should also be produced in a first party bad faith action." 899 So.2d at 1129.
. . .
3. The Court notes that it has not conducted an in camera inspection of documents filed by the Defendant in this matter. The Court relies on Ruiz for the proposition that litigation files, as described above, are to be produced.
. . .
7. The Court orders that the requested materials will be produced within thirty (30) days from the later of the date of this order or the date of the disposition of any appellate certiorari proceedings reviewing this order.
The trial court's order compelling discovery is the subject of these proceedings.

*582 II. RUIZ DOES NOT ELIMINATE THE ATTORNEY-CLIENT PRIVILEGE

XL argues that the trial court erred by compelling attorney-client privileged documents relating to the (i) defense of the bad faith claim, (ii) underlying contract claim, and (iii) time period after the bad faith claim was made.

A. Defense of the Bad Faith Claim

XL argues that the trial court's order erroneously requires it to produce letters drafted by its counsel regarding the legal issues in the bad faith case. As the trial court quoted in its order, the Florida Supreme Court's holding in Ruiz pertained to documents "in the underlying claim and related litigation file." Id. at 1130. The Court's ruling in Ruiz does not pertain to documents relating to the bad faith litigation in any way. Aircraft Holdings provides no other authority for compelling attorney-client privileged documents relating to the bad faith claim. Therefore, those documents are protected from disclosure by the privilege as provided in section 90.502, Florida Statutes (2005). We agree with XL that the trial court should have conducted an in camera inspection of the documents at issue and excluded attorney-client privileged documents relating to defense of the bad faith claim from its order compelling production. Ruiz, 899 So.2d at 1130 (stating, "we caution that where the coverage and bad faith actions are initiated simultaneously, the courts should employ existing tools, such as the abatement of actions and in-camera inspection, to ensure full and fair discovery in both causes of action"); cf. United Servs. Auto. Ass'n v. Jennings, 731 So.2d 1258, 1260 (Fla.1999) (ruling that in a third-party bad faith action, the required discovery "does not include any attorney-client communication or work-product material which pertains to the insurer's defense of itself in the badfaith action").

B. Underlying Contract Claim

Holding of Ruiz
The trial court cited Ruiz and interpreted the opinion to eliminate the attorney-client privilege whenever a bad faith claim is brought under section 624.155. Although we understand how the trial court concluded that Ruiz also applies to attorney-client privileged documents from the general language used by the Florida Supreme Court in its decision, we do not interpret the holding of Ruiz as expansively. The holding of Ruiz applies only to work product  not attorney-client privileged documents.
In Ruiz, the Florida Supreme Court exercised its discretionary jurisdiction over the Fourth District Court of Appeal's decision below because it conflicted with decisions from other district courts "with regard to issues concerning application of work product privilege to shield documents from discovery in the insurance bad faith context." Ruiz, 899 So.2d at 1122. Significantly absent from the Court's conflict determination is any mention of the attorney-client privilege. This is not surprising because the underlying opinion by the Fourth District Court of Appeal applies only to work product and does not address attorney-client privileged communications in any way. Allstate Indemnity Co. v. Ruiz, 780 So.2d 239 (Fla. 4th DCA 2001). Significantly, because attorney-client privilege was not an issue in conflict, the Florida Supreme Court did not decide the issue because of a lack of jurisdiction. See e.g., Kelly v. Cmty. Hosp. of the Palm Beaches, Inc., 818 So.2d 469, 470 n. 1 (Fla.2002) (stating "[w]e decline to address the issues raised by the petitioner which are beyond the scope of the basis for our conflict jurisdiction"). In Savoie v. State, 422 So.2d 308, 310 (Fla.1982), the Court determined *583 it had jurisdiction because of a conflict between decisions of the district courts of appeal over an issue, but then decided the case on a different issue than the one in conflict. The Court explained:
We have jurisdiction, and, once this Court has jurisdiction of a cause, it has jurisdiction to consider all issues appropriately raised in the appellate process, as though the case had originally come to this Court on appeal. This authority to consider issues other than those upon which jurisdiction is based is discretionary with this Court and should be exercised only when these other issues have been properly briefed and argued and are dispositive of the case.
Id. at 312. Unlike Savoie, the Court in Ruiz could not have reached the issue of attorney-client privilege because it was totally absent in the appellate process and accordingly was not dispositive of the case.
Therefore, the holding in Ruiz applies only to the work-product privilege. As stated by Justice Wells, in his separate opinion in Ruiz, "the only issue being decided in this case is the discovery of work product in the claims file pertaining to the underlying insurance claim." 899 So.2d at 1132 (Wells, J., concurring in part and dissenting in part). The majority does not take issue with his characterization of the issue in the case, understandably because it describes it in the same manner. "[O]ur determination essentially eliminates the basis of the discovery dispute and the issue giving rise to the conflict between the decision below and the multiple decisions of other district courts of appeal pertaining to when work product privilege attaches to shield documents from production in this context." Id. at 1130 (emphasis added).
Reaching its decision, the Court receded from the portion of its decision in Kujawa v. Manhattan National Life Insurance Co., 541 So.2d 1168 (Fla.1989), regarding work product. Ruiz, 899 So.2d at 1131 (stating, "we believe that a portion of our decision in Kujawa is both legally and practically untenable;" "We also clarify and, to the extent necessary, recede from our decision in Kujawa as explained herein"). In Kujawa, the trial court ordered production of files pertaining to the handling of an insurance claim without regard to the attorney-client privilege or work product. 541 So.2d at 1169. The Fourth District Court of Appeal held that the insurance company was entitled to these protections to the same extent as any other litigant and the Florida Supreme Court agreed:
We have considered the arguments of the parties and amicus curiae and are persuaded that the district court was correct in concluding that an adversarial, not a fiduciary, relationship existed between the parties and that the legislature in creating the bad faith cause of action did not evince an intent to abolish the attorney-client privilege and work product immunity. We point out, as did the district court below, that the holding of absolute immunity from disclosure extends only to matters arising under the attorney-client privilege. Files protected by the work product immunity only may yield to inspection if an appropriate showing under rule 1.280(b)(2), Florida Rules of Civil Procedure, can be made. Even this rule, however, precludes discovery of attorney-client matters.
Id. Because the Court in Kujawa held that the attorney-client privilege applies to discovery in a bad faith action, and is not eliminated, and the Court in Ruiz did not recede from that portion of the opinion, we continue to apply the portion of Kujawa relating to attorney-client privilege as controlling precedent. Therefore, we hold that the trial court erred by compelling *584 production of attorney-client privileged documents.[2]

First-Party Precedent
Even if the Court in Ruiz receded from Kujawa in its entirety, as argued by Aircraft Holdings, controlling precedent by this court, Progressive American Insurance Co. v. Lanier, 800 So.2d 689 (Fla. 1st DCA 2001), indicates that the attorney-client privilege should be applied in a first-party bad faith action.
In Lanier, Progressive petitioned for writ of certiorari for review of the trial court's order granting a motion to compel discovery. The Laniers filed a first-party bad faith action against Progressive following the theft of a tractor-trailer insured by Progressive. The issue before the court was "whether the trial judge departed from the essential requirements of law by requiring Progressive to produce documents in its claim file and documents and/or entries in its `face sheet notes' (computer entries utilized by claims representatives) that Progressive claimed were subject to the attorney-client privilege and/or were protected work product." Id. at 690. This court granted the petition for certiorari because the attorney-client privileged documents between Progressive and its lawyers should not have been compelled by the trial court. Id. at 690-91.
The court described the various documents subject to the attorney-client privilege and held that "the trial court departed from the essential requirements of law by requiring production of pages 1-114 of Progressive's claim file, except pages 4, 11-17, 61-63, and 85 thereof, over Progressive's claim of attorney-client privilege" and "by requiring production of all those entries in the facesheet notes as above discussed that constitute attorney-client communications." Id. at 691. Because Ruiz does not overrule Lanier, we follow Lanier and hold that the trial court's order compelling production of attorney-client privileged documents in this case departed from the essential requirements of law.

Statutory Construction
Even if this court were not required to follow Kujawa or Lanier, the plain meaning of sections 90.502 and 624.155 indicates that the attorney-client privilege has not been eliminated in first-party bad faith actions. Aircraft Holdings argues that XL's attorney-client privilege was eliminated once Aircraft Holdings filed the bad faith action pursuant to section 624.155. For this argument to prevail, we would need to interpret section 624.155 to substantively include as part of the bad faith claim how an insurance company, as a client to a lawyer, reacted to its lawyer's advice on the initial claim and in conducting litigation on a breach of contract action. That is, if the legislature placed the communications between an insurance company and its lawyer at issue as part of the bad faith claim provided in section 624.155, then there is no attorney-client privilege when the bad faith action is filed. Because Aircraft Holdings argues that section 624.155 substantively eliminates the privilege provided by section 90.502 in this instance, the applicability of section 90.502 is substantive rather than *585 procedural.[3] Accordingly, we are analyzing the two statutory sections, 624.155 and 90.502, under statutory construction principles, rather than applying a procedural rule of privilege to section 624.155. See City of North Miami v. Miami Herald Publ'g Co., 468 So.2d 218 (Fla.1985) (comparing chapter 119 and section 90.502 regarding disclosure of attorney-client privileged documents).[4]
There is a complete absence of any reference in the bad faith statute, section 624.155, to the attorney-client privilege. Nor is there any mention within section 624.155 that bad faith includes how the insurance company reacted to advice of counsel, with respect to the claim or in a breach of contract action, in a first-party action. Accordingly, the express provisions of section 90.502 apply and the attorney-client privilege is not eliminated by a plain reading of the statutes. In Stoletz v. State, 875 So.2d 572 (Fla.2004), the Florida Supreme Court discussed statutory construction:
This Court has repeatedly held that the plain meaning of statutory language is the first consideration of statutory construction. See State v. Bradford, 787 So.2d 811, 817 (Fla.2001). In addition, "a specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms." McKendry v. State, 641 So.2d 45, 46 (Fla.1994).
Id. at 575. As in Stoletz, the language of the general statute dealing with bad faith, section 624.155, and the language of the more specific statute dealing with attorney-client privilege, section 90.502, is plain and unambiguous. There is an attorney-client privilege specifically provided within section 90.502 and the bad faith statute has no language to eliminate the privilege.[5]
Moreover, section 90.502(3) describes who may claim the privilege:
(a) The client.
(b) A guardian or conservator of the client.
(c) The personal representative of a deceased client.
(d) A successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, whether or not in existence.
(e) The lawyer, but only on behalf of the client. The lawyer's authority to claim the privilege is presumed in the absence of contrary evidence.
The insurance company, as the client, is the holder of its attorney-client privilege. There is no provision within the statute for the insured to claim the insurance company's attorney-client privilege. Only *586 those who have the privilege may waive it through voluntary disclosure. See § 90.507, Fla. Stat. (2005) ("A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person, or the person's predecessor while holder of the privilege, voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication."). Therefore, according to the Florida Evidence Code, XL, and not Aircraft Holdings is the holder of its privilege, and only XL can waive it by voluntary disclosure.[6] If the privilege were eliminated upon filing of the bad faith action as argued by Aircraft Holdings, then Aircraft Holdings would essentially own the privilege and decide when it could be waived. We reject Aircraft Holdings' argument because it contradicts a plain reading of the Florida Evidence Code.
Section 90.502 also describes circumstances when there is no attorney-client privilege recognized although the communications would otherwise fall within the scope of the privilege. See § 90.502(4), Fla. Stat. (2005) (listing five instances where there is no lawyer-client privilege). There is no exception provided for communications between an insurance company and its lawyer in the event a bad faith action is filed. Id.; see Eastern Air Lines, Inc. v. U.S. Aviation Underwriters, Inc., 716 So.2d 340, 343 (Fla. 3d DCA 1998) (ruling that the attorney-client privilege was not eliminated and recognizing that "[n]one of those five circumstances [in section 90.502(4)] is present in this case"). Because the legislature did not provide an exception to the attorney-client privilege for a bad faith action in its list of exceptions, we decline to create one. See Young v. Progressive S.E. Ins. Co., 753 So.2d 80, 85 (Fla.2000) (applying expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another, to a list of statutory exclusions).
Therefore, the trial court erred by not giving section 90.502, the attorney-client privilege, full effect. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) ("Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another."); State v. Goode, 830 So.2d 817, 824 (Fla.2002) (stating that *587 "a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless"). Because of our ruling, we do not reach XL's argument that the documents relating to a time period after the bad faith claim was made should not be discoverable.[7]

Conclusion
Therefore, we grant XL's petition for writ of certiorari and quash the trial court's order compelling attorney-client privileged documents and remand with directions. We certify the following question to be of great public importance:

Does the Florida Supreme Court's holding in Allstate Indemnity Co. v. Ruiz, 899 So.2d 1121 (Fla.2005), relating to discovery of work product in first-party bad faith actions brought pursuant to section 624.155, Florida Statutes, also apply to attorney-client privileged communications in the same circumstances?

HAWKES, J., concurs; WEBSTER, J., concurs in result only.
NOTES
[1] "[T]he party seeking review must demonstrate not only that the trial judge departed from the essential requirements of law, but also that the harm resulting from the erroneous order cannot be remedied in a plenary appeal from the final judgment." Philip J. Padovano, Florida Appellate Practice, § 9.7, at 181 (2006 ed.). Aircraft Holdings agrees that an order compelling discovery over a claim of privilege is reviewable by certiorari, id. at § 28.5 n. 5, at 680 (collecting cases), but argues that the petition should be denied because the trial judge did not depart from the essential requirements of law.
[2] Aircraft Holdings argues that communications between XL and counsel/third party administrators Kern & Wooley, LLP are not protected attorney-client privileged documents because they are in the capacity as a business advisor. Because all documents were compelled, the trial court did not reach this issue. On remand, the trial court should conduct an in camera inspection to determine whether those documents are subject to the attorney-client privilege. See Charles W. Ehrhardt, Florida Evidence, § 502.2 at 327-28 & n. 9 (2005 ed.) (stating that the attorney-client privilege recognizes confidential communications made during the rendition of legal services to the client, not as a business advisor).
[3] When section 90.502 was enacted and revised, the Florida Supreme Court adopted it as a rule to the extent that the privilege is procedural. In re Fla. Evidence Code, 372 So.2d 1369 (Fla.1979); In re Fla. Evidence Code, 638 So.2d 920 (Fla.1993); In re Fla. Evidence Code, 675 So.2d 584 (Fla.1996); In re Amendments to the Fla. Evidence Code, 825 So.2d 339 (Fla.2002).
[4] Although the attorney-client privilege has been codified as part of the Florida Evidence Code, the work product privilege, addressed in Ruiz, is not part of the Evidence Code, but is provided by rule. See Fla. R. Civ. P. 1.280(b)(3). Accordingly, this statutory comparison was not applicable and therefore absent in the Ruiz analysis.
[5] Had the legislature intended to eliminate the privilege when the underlying claim on the policy was concluded, as argued by Aircraft Holdings, it could have said so in section 624.155 but did not. Cf. § 624.311(2), Fla. Stat. (2005) ("The records of insurance claim negotiations of any state agency or political subdivision are confidential and exempt from s. 119.07(1) until termination of all litigation and settlement of all claims arising out of the same incident.").
[6] An insurance company may choose to defend its actions by proving it followed the advice of its lawyer when it acted on the claim. If the company defends on that basis, it places the attorney-client communications at issue and thereby waives the privilege. See Charles W. Ehrhardt, Florida Evidence, § 502.8 at 358-59 (2005 ed.) ("The client is the holder of the privilege and is the only person who may waive it. If the client voluntarily discloses the substance of a communication, the client waives the privilege as to that communication. . . . If the client offers testimony concerning a specific communication to an attorney, the client waives the privilege for all other communications with the attorney on the same subject matter."); Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863-64 (3d Cir.1994) (stating that the attorney-client privilege is waived when the client puts the attorney's advice in issue; "A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality."). In this case, it is undisputed that XL is not defending on that basis, and therefore did not waive its privilege. See Home Ins. Co. v. Advance Mach. Co., 443 So.2d 165 (Fla. 1st DCA 1983) (holding that insurance company did not waive its attorney-client privilege by bringing an action for contribution when the reasonableness of a settlement was at issue).
[7] The trial court interpreted Ruiz to eliminate the attorney-client privilege for all documents relating to Aircraft Holdings' claim on the contract. We agree with XL that Ruiz should not be read so broadly. But even if it is read to eliminate the attorney-client privilege, there should be no discovery until the underlying breach of contract action has been resolved. The trial court's ruling on the breach of contract claim is pending on appeal, therefore is not finally resolved. Ruiz does not require production of attorney-client documents relating to the breach of contract action while it continues to be litigated. 899 So.2d at 1130 (stating "litigants who choose to file both actions [breach of contract and bad faith] simultaneously must recognize that certain documentation relevant to the bad faith action may not be available for discovery until after resolution of the underlying matter"). Aircraft Holdings cites no other authority for making those disclosures until the contract action is over, including any appeals. Therefore, the trial court erred by requiring production according to the schedule described in paragraph 7 of its order.