74 So.3d 105 (2011)
STATE FARM FLORIDA INSURANCE COMPANY, Petitioner,
v.
SEVILLE PLACE CONDOMINIUM ASSOCIATION, INC., Respondent.
No. 3D08-2538.
District Court of Appeal of Florida, Third District.
July 20, 2011.
Maltzman Foreman, and Jeffrey B. Maltzman, Miami; Butler, Pappas, Weihmuller, Katz, Craig, and John W. Weihmuller, Tampa; Elizabeth K. Russo, Miami, for petitioner.
Mintz, Truppman, and Mark J. Mintz, Miami; Bilzin Sumberg Baena Price & Axelrod, and Mitchell E. Widom, Miami; Ross & Girten, and Lauri Waldman Ross, Miami, for respondent.
*106 Colodny, Fass, Talenfeld, Karlinsky & Abate, and Maria Elena Abate and Adam S. Rubenfield, Fort Lauderdale, as Amicus Curiae, in support of Petitioner.
Before RAMIREZ, SHEPHERD, CORTIÑAS, ROTHENBERG, LAGOA, SALTER, and EMAS, JJ.

ON REHEARING EN BANC
SALTER, J.
On consideration of the petitioner's motions for rehearing and rehearing en banc, the Court grants the motions, withdraws its opinion issued October 14, 2009, and substitutes the following opinion.
State Farm Florida Insurance Company seeks a writ of certiorari quashing circuit court orders that allowed Seville Place Condominium Association, Inc., to amend its complaint to add statutory[1] and common law bad faith claims and a punitive damage claim before the entry of a final judgment on the policy-phase issues.[2] We deny the writno irreparable injury has yet occurredand issue this opinion to clarify the requirements for the exercise of our certiorari jurisdiction in such cases.

The Hurricane, the Policy, and the Claim
Seville Place is a residential condominium consisting of forty-five duplexes (for a total of ninety condominium units) in Miami Lakes, Florida. On October 24, 2005, Hurricane Wilma caused substantial windstorm damage at Seville Place, particularly to the forty-five roofs over the units.
The Association had obtained and paid for a State Farm condominium association insurance policy that was in force at the time of the storm. The policy specifically covered direct physical loss or damage to property caused by a hurricane, subject to certain deductibles and various exclusions. In the event of a dispute between the insurer and insured regarding the loss amount, the policy specified that the dispute would be resolved by appraisal:
If we [State Farm] and you [the Association] disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. . . . If we submit to an appraisal, we will still retain our right to deny the claim.
The Association made a claim under the policy for its hurricane-related loss. In January 2006, State Farm made two payments on the claim to the Association in the total amount of $90,564.62, apparently based on a calculation that the roofs could be repaired rather than replaced.[3] The *107 Association's estimate exceeded $4.6 million, based on an assessment that the roofs would have to be replaced. In October 2006, the Association made a written demand for appraisal under the policy.

The Appraisal and Award
State Farm and the Association did not reach agreement regarding the Association's right to invoke appraisal and any conditions applicable to that process. In February 2007, the Association commenced a circuit court action against State Farm for breach of the insurance contract and for declaratory relief regarding coverage and State Farm's waiver of policy defenses. State Farm filed its own motion to enforce the appraisal provision, asserting that it had "at all times agreed to and does further hereby agree to proceed with appraisal," but also seeking certain conditions.
The circuit court then ordered the parties to appraisal (without the conditions sought by State Farm) and ultimately appointed a neutral umpire to conduct the appraisal with each party's designated appraiser. The trial court allowed sixty days for the completion of the appraisal process and directed the appraisers to "informally produce" the basis for the amount of the loss.
After further proceedings, the trial court set a final appraisal hearing for June 28, 2008. The day before that hearing, however, State Farm filed an emergency motion and affidavit seeking removal of the neutral umpire previously appointed by the court. State Farm later supplemented this motion with a request for an "entirely new panel to conduct a new appraisal," asserting that otherwise it would "require many weeks, months, and possibly even years to sort through the multiple issues related only to this highly problematic and invalid appraisal gone wrong."
The Association's appraiser and the umpire ultimately signed a "final appraisal award" fixing the insured loss at $2,960,405 after hearing or seeing all evidence provided by State Farm and the Association. The award made it clear that it excluded any interest, costs, and attorney's fees that might be determined by the court, and that it should be reduced by amounts previously paid by State Farm and any applicable deductible.

Confirmation of the Appraisal; Amendment
Before the appraisal began, State Farm acknowledged that the policy was in effect and that some part of the Association's claim was covered by making the January 2006 payments. In the lawsuit, State Farm asserted thirteen amended affirmative defenses. These included allegations that the Association had failed to comply with post-loss conditions imposed by the insurance policy, and that certain items claimed by the Association were excluded from coverage: condominium unit owner personal property; wall and floor coverings, drapes, lighting units, and other items within the interior of the units; water damage following the hurricane; wear and tear to covered property, including rust and damage due to water seepage over a period of time; and any loss occurring as a result of faulty design or maintenance. Following the filing of the final appraisal award, the trial court confirmed the award, denied State Farm's emergency motion for removal of the neutral umpire, and granted the Association's motions to amend the complaint to add the statutory bad faith claim, a common law "breach of implied covenant of good faith" claim, and a demand for punitive damages. The *108 court also determined that State Farm's affirmative defenses had been subsumed in the confirmation order "and/or such defenses were waived by State Farm." The trial court did not enter a final judgment fixing a total amount of principal and any prejudgment interest in a form ready for execution (or ripe for appeal). State Farm's petition for certiorari followed.

Applicable Florida Law
It is well settled that a statutory first-party bad faith action is premature until two conditions have been satisfied: (1) the insurer raises no defense which would defeat coverage (an issue for the judicial process rather than the appraisal process), or any such defense has been adjudicated adversely to the insurer; and, (2) the actual extent of the insured's loss must have been determined. Vest v. Travelers Ins. Co., 753 So.2d 1270, 1275-76 (Fla.2000); State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla.1995). The original panel opinion and dissent in this case applied these principles to a case in which extent of loss was determined by appraisal rather than a judicial process, and in which no final, appealable judgment had been rendered.
Upon rehearing en banc, however, we have concluded that we should not exercise certiorari jurisdiction to resolve those interesting and important questions of law at this procedural point in the case below. "For an appellate court to review a nonfinal order by petition for certiorari, the petitioner must demonstrate that the trial court departed from the essential requirements of law, thereby causing irreparable injury which cannot be adequately remedied on appeal following final judgment." Belair v. Drew, 770 So.2d 1164, 1166 (Fla.2000).
State Farm's petition is directed to an order allowing amendments to a complaint and an order denying reconsideration of that order. On the record before us, no discovery pertaining to the bad faith claims or the punitive damages claim has yet been sought or compelled, and State Farm has not yet responded to the second amended complaint.[4] No irreparable injury has yet occurred, and none is certain to follow. We must therefore deny the present petition. Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 650 (Fla. 2d DCA 1995).[5]
To the extent that we previously have granted such a petition when irreparable harm seems possible rather than imminent, we recede from such decisions. For example, in North Pointe Insurance Co. v. Tomas, 999 So.2d 728, 728-29 (Fla. 3d DCA 2008), we granted an insurer's petition and quashed "a non-final order denying a motion to dismiss or abate a bad faith claim arising out of a dispute over homeowners' insurance coverage," remanding for "abatement of the bad faith claim pending disposition of the breach of contract action." While the bad faith claim in the trial court may have been premature in that case, the irreparable harm requirement had not yet been satisfied.
Similarly, we recede from the broad holding that "certiorari is available to challenge a premature bad faith claim or premature bad faith discovery." XL Specialty *109 Ins. Co. v. Skystream, Inc., 988 So.2d 96, 98 (Fla. 3d DCA 2008). Premature bad faith discovery and an order granting a motion to compel production of an insurer's claims file (or denying a motion for a protective order directed to such documents) may demonstrate an irreparable harm, but an order merely permitting amendment to add an allegedly-premature bad faith claim does not. For the same reason, a trial court order denying a motion to dismiss an allegedly-premature bad faith claim would not, without more, satisfy the "irreparable harm" requirement for certiorari; that form of alleged injury can be remedied on direct appeal. See State Farm Mut. Auto. Ins. Co. v. O'Hearn, 975 So.2d 633, 636 (Fla. 2d DCA 2008).

Conclusion
In this case, State Farm's petition did not establish irreparable, material harm, a threshold requirement for the issuance of a writ of certiorari. Riano v. Heritage Corp. of So. Fla., 665 So.2d 1142, 1145 (Fla. 3d DCA 1996).
Petition denied; stay order entered November 5, 2008, vacated.
RAMIREZ, CORTIÑAS, ROTHENBERG and LAGOA, JJ., concur.
SHEPHERD, J., concurring.
I write to clarify my view that the more appropriate disposition of this case is a dismissal of the petition. The point is more than just academic.
As Judge Chris Altenbernd has written with characteristic lucidity in Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646 (Fla. 2d DCA 1995):
The case law usually explains that a certiorari petition must pass a three-prong test before an appellate court can grant relief from an erroneous interlocutory order. A petition must establish (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on postjudgment appeal. See Gulf Cities Gas Corp. v. Cihak, 201 So.2d 250 (Fla. 2d DCA 1967). While this traditional test is correct, the grammar of the test places the description of the appellate court's standard of review on the merits before the two threshold tests used to determine jurisdiction.
Id. at 648. Thus, the first order of business for a court presented with a petition to review an interlocutory order by certiorari is to determine whether the order will result in material injury for the remainder of the case that cannot be corrected on postjudgment appeal.[6] This inquiry determines whether the reviewing court has jurisdiction to consider the petition at all. If the answer to that question is "no," the petition should be dismissed. Id. The court's labor is at an end. If the answer is "yes," then, and only then, the court may address the second and final questionis the order a "departure from the essential requirements of the law?"
At this juncture, three additional options open to the reviewing court are to: (1) deny the petition; (2) deny the petition on the merits; or (3) grant relief. See Topps v. State, 865 So.2d 1253 (Fla.2004).[7] The *110 first of these options is intended to encompass only "`procedural bars' . . . meaning that the case, claim, or issue is precluded in some manner from being considered on the merits." Id. at 1254. Examples of the proper use of this option include the denial of a petition on the ground it is moot, barred by the doctrines of res judicata or collateral estoppel, or a denial in the exercise of the court's discretion. Id. at 1254-55, 1257. Although occasionally misused to signify a dismissal of the petition for lack of jurisdiction, see Parkway, 658 So.2d at 649 n. 3, the proper uses of this option are limited. Furthermore, any elaboration by a court on such a denial, beyond explaining why the petition is procedurally barred, is surplus and of no precedential value. State ex rel. Biscayne Kennel Club v. Bd. of Bus. Regulation, 276 So.2d 823, 826 (Fla.1973) (stating that where a statement of a district court of appeal is not essential to the decision of that court, or "obiter dictum," it is without precedential value). In contrast, an order denying "on the merits" a petition for certiorari or a grant of a petition is a decision on the merits and the appellate court's holding is of precedential import. Topps, 865 So.2d at 1255.
Despite this well-established legal construct, the en banc court in the case before us reasons, in footnote five, "Because we have jurisdiction under Article V, Section 4(b)(3) of the Florida Constitution, we will instead "deny" the petition for failure to establish the prerequisites for a consideration of its merits." See En Banc Op. at p. 8, note 5. This reasoning is incorrect.
Article V, section 4(b)(3) does not confer jurisdiction on this court or any other district court of appeal in a particular case. It is merely an express recognition of the supervisory power the higher courts of this state always have had over the courts inferior to them, even when the power was not expressly stated in the Florida constitution.[8] A casual reading of Article V, section 4(b)(3) confirms the point:
A district court of appeal or any judge thereof may issue writs of habeas corpus returnable before the court or any judge thereof or before any circuit judge within the territorial jurisdiction of the court. A district court of appeal may issue writs of mandamus, certiorari, prohibition, quo warranto, and other writs necessary to the complete exercise of its jurisdiction. To the extent necessary to dispose of all issues in a cause properly before it, a district court of appeal may exercise any of the appellate jurisdiction of the circuit courts.
Art. V, § 4(b)(3), Fla. Const. (emphasis added). Although the power has sometimes been modified or curtailed by law,[9] it *111 is a power that inheres in all American reviewing courts, whether state or federal, and whether or not expressly stated. See Haines, 658 So.2d at 525; George E. Harris, A Treatise on the Law of Certiorari §§ 1-6 (The Lawyers' Co-Operative Publishing Co. 1893); S.A. de Smith, The Prerogative Writs, 11 Cambridge L. J. 40, 45-46 (1951). On the other hand, the law relating to the uses of the writ, whether common law or statutory, has come down to us through the centuries of upheaval and development of English and American jurisprudence. As previously discussed, that law in this State, as it relates to the petition before us, requires that we dismiss the petition.
The distinction made is not one without a difference. As William H. Rogers and Lewis R. Baxter, two students of the uses of the writ of certiorari, wrote sixty years ago:
The constitutional provisions, the statutes, and the court rules are instrinsically plain enough; but the decisions are confusing. It is a striking aspect of the case law of certiorari, in Florida as elsewhere, that major portions of many opinions consist of dicta, wholly unnecessary to the decision. These dicta mislead the bar and afford the bench "authority" for later decisions of questionable soundness.
William H. Rogers & Lewis R. Baxter, Certiorari in Florida, 4 U. Fla. L. Rev. 477, 477 (1951) (footnote omitted). If we wish to have a rightful claim to require members of the Bar to be judicious and disciplined when deciding whether to petition this court for the extraordinary relief represented by an original writ, such as a petition for certiorari,[10] we must be equally vigilant in disciplining ourselves so as not to contribute to the confusion that so often surrounds its use.
That said, I agree with that portion of the en banc opinion in which the court recedes from its decisions in North Pointe Insurance Co. v. Tomas, 999 So.2d 728 (Fla. 3d DCA 2008), and XL Specialty Insurance Co. v. Skystream, Inc., 988 So.2d 96 (Fla. 3d DCA 2008). Unlike our sister courts, see Illinois Nat'l Ins. Co. v. Bolen, 53 So.3d 388, 389-90, (Fla. 5th DCA 2011); XL Specialty Ins. Co. v. Aircraft Holdings, LLC, 929 So.2d 578, 587 n. 7 (Fla. 1st DCA 2006), petition for cert. filed, No. SC 06-1303 (Fla. June 29, 2006), and dismissed No. SC06-1303 (Fla. Sept. 9, 2008); United Auto. Ins. Co. v. Tienna, 780 So.2d 1010, 1011 n. 4 (Fla. 4th DCA 2001); Mich. Millers Mut. Ins. Co. v. Bourke, 581 So.2d 1368, 1370 (Fla. 2d DCA 1991), which have reached the issue and concluded that a bad faith claim is premature and does not accrue until the underlying insurance contract action is concluded and "the . . . carrier's appeal has been finally determined," see Bolen, 53 So.3d at 389-90, the message of this court today is that we will not exercise our jurisdiction to review orders granting leave to amend to add a bad faith claim, denying a motion to dismiss a bad faith claim, or prematurely lifting an order abating a bad faith claim on the ground the claim itself was brought prematurely, but rather will wait for a *112 proper case.[11]
I would dismiss the petition for certiorari in this case.
EMAS, J., concurs.
NOTES
[1] § 624.155, Fla. Stat. (2008).
[2] The trial court entered an order confirming the appraisal award, determining that the Association "is entitled to judgment thereon," and holding that State Farm's affirmative defenses were not meritorious "and/or such defenses were waived by State Farm." That order did not, however, assure that no further policy-phase damages would be sought by the insured, provide for execution, or constitute a final, appealable judgment.
[3] The gross amount of loss computed by State Farm was $324,017. The lesser amount paid reflected a deduction for depreciation and for the applicable deductible.
[4] Shortly after the petition was filed, we stayed proceedings in the lower court case pending further order here. We now vacate that stay.
[5] In Parkway, the petition was "dismissed" (for failure to invoke the court's certiorari jurisdiction). Because we have jurisdiction under Article V, Section 4(b)(3) of the Florida Constitution, we will instead "deny" the petition for failure to establish the prerequisites for a consideration of its merits.
[6] My remarks in this concurrence are directed to a petition for certiorari taken from a non-final order before the entry of final judgment or decree. When certiorari is invoked to seek review of a final judgment or order from a lower tribunal, the appellate court's jurisdiction and scope of review are some-what different than when examining a non-final order. See Parkway, 658 So.2d at 648 n. 2 (citing Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla. 1995)).
[7] Prior to 1939, a petition for writ of certiorari involved a clearly defined two-stage proceeding. The court first determined whether it had jurisdiction to review the order. It then received additional briefing and decided whether the order departed from the essential requirements of the law. William A. Haddad, Common Law Writ of Certiorari in Florida, 29 U. Fla. L. Rev. 207, 208 (1977). Although the separate briefing stages have been eliminated, it still is necessary for an appellate court to conduct a jurisdictional analysis prior to testing whether the non-final order passes the standard of review on its merits. Parkway Bank, 658 So.2d at 649.
[8] The Florida Constitutions of 1838, 1861, and 1865 did not expressly confer jurisdiction in certiorari on the supreme court or the circuit courts; but they did expressly vest the Florida Supreme Court with "general superintendence and control of all other Courts." The Constitution of 1868, for the first time, expressly vested jurisdiction in certiorari in both the supreme court and the circuit courts. See Art. V, § 2, Fla. Const. (1838); Art. V, § 2, Fla. Const. (1861); Art. V, § 2, Fla. Const. (1865); Art. VI, § 5, Fla. Const. (1868).
[9] As is well known, the people of Florida in 1980 formally removed the certiorari power from the Florida Supreme Court. See S.J.R. 20-C (Spec. Sess. 1979), adopted Mar. 11, 1980. However, the court performs much the same supervisory and law declaring functions it always has performed through a series of well-defined discretionary review provisions, which were modernized and codified in the Florida Constitution during the same period. See Art. V, § 3(b)(3)-(6), Fla. Const. (1980).
[10] The additional writs that have survived hundreds of years of development in England and managed to make the transatlantic voyage to this country are prohibition, mandamus, quo warranto and habeas corpus. See Alto Adams & George J. Miller, Origins and Current Status of the Extraordinary Writs, 4 U. Fla. L. Rev. 421 (1951).
[11] Orders granting discovery, on the other hand, traditionally have been reviewed by certiorari. See e.g., State Farm Fla. Ins. Co. v. Puig, 62 So.3d 23 (Fla. 3d DCA 2011); City of Key West, Tree Comm'n v. Havlicek, 57 So.3d 900 (Fla. 3d DCA 2011); Am. Ed. Enters., LLC v. Bd. of Trs., 45 So.3d 941 (Fla. 3d DCA 2010); Procter & Gamble Co. v. Swilley, 462 So.2d 1188 (Fla. 1st DCA 1985); Greyhound Lines, Inc. v. Jackson, 445 So.2d 1107 (Fla. 4th DCA 1984); Boucher v. Pure Oil Co., 101 So.2d 408 (Fla. 1st DCA 1957).